TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00366-CR







Timothy Scott Parlin, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0932738, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING








 This appeal is taken from a conviction for burglary of a habitation. See Act of May
24, 1993, 63d Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 926 (former Penal Code
§ 30.02(a)(1), since amended). (1) The jury found appellant Timothy Scott Parlin guilty, and the
trial court assessed punishment at fifty years' imprisonment after appellant pled "true" to the
enhancement paragraphs of the indictment alleging prior burglary convictions.

 Appellant advances four points of error. First, appellant urges that the trial court
erred "by admitting the identification testimony of Officer Lori Hardage because the pretrial
photographic display was impermissibly suggestive and gave rise to substantial likelihood of
irreparable misidentification." Second, appellant claims that the evidence was insufficient to
convict because the testimony of an accomplice witness was not corroborated. Third, appellant
urges that the trial court erred in admitting "evidence of a prior crime." Last, appellant argues
that the "trial court committed error in failing to strike prejudice [sic] venireperson."

 A brief summary of the facts will place the points of error in proper perspective. 
Therefore, we shall discuss the second point of error first. Appellant argues that the trial court
erred in failing to grant the motion for instructed verdict because the prosecution failed to
corroborate the accomplice witness's testimony. We are required to consider such a contention
as a sufficiency question. Madden v. State, 799 S.W.2d 683, 786 n.3 (Tex. Crim. App. 1990).

 Wade Franklin, the owner of the house at 3505 Basford in Austin, testified that he
and his wife had been at a deer lease in Sourlake, and were not home at the time of the burglary
of their home on January 14, 1993. He had not given appellant or anyone permission to break
and enter his home. Franklin acknowledged that he had recovered the rifles taken in the burglary.

 Shawn Goodall, whom the trial court charged was an accomplice witness as a
matter of law, was sixteen years old at the time of the alleged offense. Goodall testified that in
the early morning hours of January 14, 1993, he walked to appellant's house on Romeria Street,
seeking money and cigarettes. He waited until appellant arrived home about 3:30 or 4:00 a.m. 
Appellant wanted to steal some guns to sell, and Goodall knew of a house where some guns were
kept. A friend had pointed out the house to Goodall. Appellant gave Goodall a .380 caliber
handgun and told him to "blow away" anyone that got in their way. Appellant and Goodall rode
bicycles to the Franklin house. Appellant, wearing a black ski-type mask, broke out a window
pane in the back door. The two men entered the house and found guns in an unlocked cabinet. 
Four or more rifles were placed in a green duffel bag that appellant had brought with him. Some
jewelry and other items were taken. Goodall stuffed these items in his jacket pockets as appellant
handed them to him. As they left, appellant tied the duffel bag to his bicycle. Later, they stopped
to place the bag on appellant's back. At the Fiesta Grocery parking lot, they stopped once again
to alternate the carrying of the duffel bag. Goodall placed the bag across the handlebars of his
bicycle. At this time, a police officer in an unmarked vehicle drove up. Appellant told Goodall
to "dust her," and began to ride away. As Goodall began to ride away, a rifle came out of the
bag, he dropped his bicycle, and the handgun fell out of his pants. Goodall "hit" the ground upon
instructions from the officer. Goodall was taken to the police station. He later gave a confession
implicating appellant.

 Lori Hardage, an Austin police-patrol officer, was working an off-duty assignment
on January 14, 1993 for Fiesta Groceries at a construction site at 4001 North I-35. She was
completing her twelve-hour assignment, when about 5:55 a.m., she observed two subjects by a
construction trailer. Hardage was in police uniform, but was driving her own Ford Explorer. 
She approached the two men in her vehicle and inquired what they were doing there. She
identified the bearded man as appellant and the other one as Goodall. Twice, appellant told
Goodall, "Let's get the hell out of here." Appellant rode off as Hardage got out of the vehicle. 
Goodall lost his balance and fell. A rifle case emerged from the duffel bag. At gunpoint Goodall
was told to get on the ground. As he did, he threw a handgun to the ground. Hardage summoned
help. In the duffel bag were six rifles and a pistol. Goodall's jacket pockets contained jewelry,
watches, and knives. He was wearing three pairs of surgical gloves.

 Officer Mark Brackenridge arrived on the scene and took custody of Goodall. 
Hardage went to the police station and briefed Lieutenant Larry Stanley on the incident. Sergeant-Investigator Jerold Brinkoeter showed Hardage a single photograph which she identified as
appellant's picture. Brinkoeter testified that he took a confession from Goodall.

 An arrest warrant for appellant was executed at 1312 Romeria Street about 1:00
p.m. on January 14, 1993. Brinkoeter described appellant at the time as being "freshly shaved"
with red burns and razor marks on his face. Lieutenant Stanley, who was also present, observed
that appellant was the only freshly shaven man at the address. There was a Bic razor and hair on
the washbasin. The nearby trash can also contained hair.

 Turning to appellant's contention, it is observed that article 38.14 of the Texas
Code of Criminal Procedure provides: "A conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows the commission of
the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979).

 In Edwards v. State, 427 S.W.2d 629 (Tex. Crim. App. 1968), the Court of
Criminal Appeals stated:



   The test as to the sufficiency of the corroboration is to eliminate from
consideration the evidence of the accomplice witness and then to examine the
evidence of other witnesses with the view to ascertain if there be inculpatory
evidence, that is evidence of incriminating character which tends to connect the
defendant with the commission of the offense. If there is such evidence, the
corroboration is sufficient; otherwise it is not. 



Id. at 632 (citations omitted); see also Reed v. State, 744 S.W.2d 112, 126 (Tex. Crim. App.
1988); Paulus v. State, 633 S.W.2d 827, 843 (Tex. Crim. App. 1982).

 In testing the sufficiency of the corroboration, each case must be considered on its
facts and circumstances. Paulus, 633 S.W.2d at 844; Mitchell v. State, 650 S.W.2d 801, 807
(Tex. Crim. App. 1983), cert. denied, 464 U.S. 1073 (1984). All the facts and circumstances in
evidence may be looked to as furnishing the necessary corroboration. The corroborative evidence
may be circumstantial or direct. Reed, 744 S.W.2d at 126. The combined cumulative weight of
the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the
accused with the commission of the offense supplies the test. Id. Thus, it is not necessary that
the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. 
Insignificant circumstances sometimes afford the most satisfactory evidence of guilt and
corroboration of the accomplice witness's testimony. Paulus, 633 S.W.2d at 843-44.

 The presence of the accused with the accomplice witness at or near the time of the
crime may not alone be sufficient, but when coupled with other suspicious circumstances, may
constitute sufficient corroboration. Id. at 846. The same is true of proof that an accused was at
or near the scene of the crime at or about the time of its commission. Brown v. State, 672 S.W.2d
487, 489 (Tex. Crim. App. 1984); Passmore v. State, 617 S.W.2d 682, 684 (Tex. Crim. App.
1981); Hill v. State, 666 S.W.2d 130, 134 (Tex. App.--Houston [14th Dist.] 1983, pet. ref'd). 
Suspicious and furtive behavior has been held to be sufficient corroboration. Cockrum v. State,
758 S.W.2d 577, 581 (Tex. Crim. App. 1988); Hill v. State, 832 S.W.2d 724, 726 (Tex.
App.--Houston [1st Dist.] 1992, no pet.). A defendant's demeanor after the crime such as
nervousness at the sight of a police car may suggest guilty knowledge. Cockrum, 758 S.W.2d at
581. In addition, flight of the accused after a crime is committed may be sufficient corroboration. 
Passmore, 617 S.W.2d at 684-85.

 In the instant case, the accomplice witness Goodall made out a complete case
against appellant. Without the requirements of article 38.14 there could be no question as to the
sufficiency of the evidence to sustain the jury's verdict. Applying article 38.14 as we are required
to do, and the test of the sufficiency of the corroboration as discussed in Edwards, 427 S.W.2d
at 632, we must look to the testimony of the non-accomplice witnesses.

 Article 38.14 expressly provides that evidence merely showing the commission of
an offense is not sufficient alone to corroborate an accomplice witness. However, it is a factor
to be considered along with other possible factors in determining whether there is sufficient
independent evidence to corroborate the accomplice witness. Reed, 744 S.W.2d at 126; Paulus,
633 S.W.2d at 845.

 The independent evidence shows the burglary of the Franklin home by someone. 
There was also proof that the bearded appellant was near the scene of the crime at the
unreasonable hour of 5:55 a.m., about the time of the commission of the offense, in the company
of the accomplice witness who had the fruits of the crime. When approached by a police officer,
appellant twice yelled to the accomplice witness, "Let's get the hell out of here." Appellant then
fled. A few hours later when arrested at home, he was clean-shaved. There were razor marks
and burns on his face and hair in the wash basin. All the facts and circumstances furnish
sufficient corroboration of the accomplice witness. See Hill, 666 S.W.2d at 134. Viewing the
evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could
have found sufficient evidence to corroborate the accomplice witness and to find beyond a
reasonable doubt all the essential elements of the offense charged. Jackson v. Virginia, 443 U.S.
307, 319 (1979); Villalon v. State, 791 S.W.2d 130, 132 (Tex. Crim. App. 1990); Herndon v.
State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990). Point of error two is overruled.

 We now consider appellant's first point of error. In his appellate brief, appellant
does not mention the motion to suppress his in-court identification by Officer Lori Hardage
because the pretrial photographic display was impermissibly suggestive. It is obvious, however,
that appellant is relying on the overruling of the motion to suppress to preserve his error. In his
motion to suppress, appellant, relying upon "the due process provisions of the United States
Constitution and Article I, Sec. 19 of the Texas Constitution," claimed that the showing of a
single photograph to Officer Hardage by the Austin Police Department was an impermissibly
suggestive photographic display which tainted any possible in-court identification of appellant by
Hardage and, thus, should be suppressed.

 Due process of law prohibits the admission of identification testimony that is
inherently unreliable. If identification testimony unnecessarily follows suggestive pretrial
procedures, that testimony will still be admissible if the totality of the circumstances indicates that
the testimony is reliable. Manson v. Brathwaite, 432 U.S. 98, 113-14 (1977); Harris v. State,
827 S.W.2d 949, 959 (Tex. Crim. App. 1992); see also Cooks v. State, 844 S.W.2d 697, 731
(Tex. Crim. App. 1992), cert. denied, 113 S. Ct. 3048 (1993). Thus, the identification testimony
will be admissible "if the indicia of reliability outweigh the apparent corrupting effect of the
unnecessarily suggestive pretrial occurrence." Harris, 827 S.W.2d at 959. Where the "totality
of the circumstances show no substantial likelihood of misidentification," the testimony is
considered "reliable." Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988), cert.
denied, 491 U.S. 910 (1989). The burden is on the defendant to show by clear and convincing
proof that the in-court identification is unreliable. Delk v. State, 855 S.W.2d 700, 706 (Tex.
Crim. App.), cert. denied, 114 S. Ct. 481 (1993).

 At the pretrial suppression hearing, Officer Hardage was the only witness. She
related that when she drove up to appellant and Goodall at the construction site, she was within
three feet of appellant; and that she got a good look at appellant by virtue of a nearby street light
and the dawn's early light. Appellant stared straight at her for five or ten seconds. She was able
to see "snot caked in his beard" and to describe his general appearance and clothing. Hardage
testified that she could not put "a name with the face" but she had seen appellant's mug shot and
knew that he was a known burglar in the area she normally patrolled in Austin--the Adam sector.

 At the police station, Hardage was discussing known associates of Goodall with
Lieutenant Stanley when he mentioned the name of "Parlin," just as Goodall was brought into the
room. Stanley then inquired of Goodall who had been with him. Goodall replied that Stanley had
just mentioned that person's name. Hardage then met with Sergeant Brinkoeter to give her report. 
Since Hardage had stated that she recognized appellant from a mug shot, Brinkoeter showed her
a single photograph of appellant which she immediately identified. She could not be sure if it was
the same mug shot she had seen before, but it was a similar one showing appellant with a beard
or goatee. Hardage then identified appellant in the courtroom at the suppression hearing, although
she noted that he had shaved his beard off and cut his hair.

 In response to the prosecutor's questions, Hardage stated that her identification was
based on her recollection of events at the parking lot on the morning of January 14, 1993, as
opposed to the photograph shown to her later. Moments later, she stated that her identification
was based on "both." Still later, Officer Hardage clarified her earlier testimony by stating her
identification was based solely on her observations at the parking lot and not on the photograph
shown her later by Sergeant Brinkoeter. She adhered to this statement despite vigorous cross-examination and inquiry by the trial court.

 While the showing of a single photograph to Officer Hardage was improper and
possibly impermissively suggestive, we do not find that the trial court erred in overruling the
motion to suppress the in-court identification. Hardage had a good opportunity to view appellant
at the construction site. Her testimony reflected that she was very attentive when she observed
appellant. She was able to give a good description of appellant, his appearance, and some of the
clothing he was wearing. Officer Hardage's description of appellant was not seriously challenged
and could be considered accurate. The level of certainty clearly surrounded Hardage's
identification of appellant, and the time between the encounter at the construction site and the
confrontation at the suppression hearing was only a matter of a few weeks. There was another
consideration. Officer Hardage was familiar with appellant's mug shot prior to the encounter at
the construction site. All of these factors weigh against the corrupting effect of any suggestive
identification itself. See Cantu v. State, 738 S.W.2d 249, 252 (Tex. Crim. App. 1987).

 In reviewing a trial court's decision at a suppression hearing, an appellate court
does not engage in its own factual review; it determines only whether the record supports the trial
court's fact findings. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). If the trial
court's fact findings are supported by the record, an appellate court will not disturb the findings
absent an abuse of discretion. On appellate review, the court normally will address only the
question of whether the trial court improperly applied the law to the facts. Id. at 543. We do not
find that the trial court abused its discretion. There was no violation of the Due Process Clause
of the Fourteenth Amendment to the United States Constitution. Our conclusion is strengthened
by the testimony as to appellant's identification offered at trial. Moreover, at trial, to support the
in-court identification, the State offered into evidence the single photograph of appellant which
had been shown to Officer Hardage. Appellant's counsel stated: "No objection." Any error
preserved as to this photograph by the ruling on the motion to suppress was waived. See Jones
v. State, 833 S.W.2d 118, 125-26 (Tex. Crim. App. 1992).

 In his motion to suppress, appellant cited article I, section 19 of the Texas
Constitution (due course of the law of the land). He did not urge this authority at the suppression
hearing nor does he mention any state constitutional issue in his point of error. Appellant
certainly has not briefed this issue. Tex. R. App. P. 74(d)(f). We do not find this contention
before us for review. See Robinson v. State, 851 S.W.2d 216, 222 n.4 (Tex. Crim. App. 1993);
Heitman v. State, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991); McCambridge v. State,
712 S.W.2d 499, 501-02 n.9 (Tex. Crim. App. 1986), cert. denied, 495 U.S. 910 (1990); Garza
v. State, 828 S.W.2d 432, 434 n.1 (Tex. App.--Austin 1992, pet. ref'd). Point of error one is
overruled.

 In his third point of error, appellant contends that the trial court erred in "admitting
evidence of a prior crime." In rebuttal at the guilt-innocence stage of the trial, the State
announced its intention to call Blanche Utterberg as a witness. The State urged that appellant had
raised the issue of his identity by cross-examination which had undermined the State's case so that
evidence of a prior burglary was admissible on the issue involved. See Tex. R. Crim. Evid.
404(b). (2) The trial court ruled that the issue of identity had indeed been raised by appellant. See
Siquerios v. State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985). The trial court then correctly
noted that in order to be admissible on the issue of identity, the extraneous offense must be a
"signature-type" crime. The extraneous offense, if admissible on the issue of identity, must so
nearly resemble the alleged offense as to be the earmark of the accused's handiwork. The
evidence should indicate such an unusual and distinctive method as to constitute a signature
offense. Collazo v. State, 623 S.W.2d 647, 648 (Tex. Crim. App. 1981); see also Beets v. State,
767 S.W.2d 711, 740-41 (Tex. Crim. App. 1988) (op. on reh'g); Lazcano v. State, 836 S.W.2d
654, 651-59 (Tex. App.--El Paso 1992, pet. ref'd).

 The trial court permitted a formal objection. Appellant based his objection on rule
404(b) that the extraneous offense was not admissible on the issue of identity. He then added that
the admission of the evidence would result in such unfair prejudice as to substantially outweigh
its probative value. See Tex. R. Crim. Evid. 403. (3) The trial court overruled the objections. It
did not first hear evidence outside the jury's presence as to the similarities of the offenses.

 Utterberg testified before the jury that on February 5, 1991, she saw "two young
boys" on bicycles go to a neighbor's home across the street; that the neighbor was not at home;
that one of the individuals broke a window pane in a door under the carport and that the other
individual remained outside as a look-out. While she was telephoning 911, Utterberg saw the two
individuals ride off on their bicycles. They returned, however, and the same individual, a
teenager, reentered the house, while the other individual again assumed the look-out position
outside. Later, the police brought the man who acted as a "look-out" to the Utterberg home. She
identified appellant as that man, (4) and testified that he never entered the neighbor's house. 
Utterberg described appellant as having a beard and long hair. Austin Police Officer Christopher
Hearon testified that he responded to a burglary call at 1409 Kamar Drive on February 5, 1991;
that a Timothy Parlin was arrested, but the second suspect was not apprehended. The name and
age of the second suspect were not given. Although Utterberg did not give any address, it appears
that the officer was testifying about the same incident. This was the extent of the evidence as to
the extraneous act before the jury at the guilt-innocence stage of the trial. (5)

 The State argues that the two offenses or transactions involved two males on
bicycles, one being a teenager, who burglarized unoccupied homes by breaking a window pane
in a door. It contends that the offenses were sufficiently similar to justify the admission of the
extraneous act. Appellant argues that the evidence did not indicate such an unusual and distinctive
method as to constitute a signature offense. Appellant notes that the instant offense occurred at
nighttime and that the other transaction occurred in the daytime; that according to the State's
evidence, in the instant offense, he wore a mask, broke the window pane himself, entered the
house, and acted as the leader in the commission of the offense and not as a "look-out."

 We conclude that the opinion of the Court of Criminal Appeals in Bishop v. State,
869 S.W.2d 342 (Tex. Crim. App. 1993), is here instructive:



   In Montgomery v. State, 810 S.W.2d 372, 387-388 (Tex. Crim. App. 1990), this
Court signaled its intent to eschew formalistic determinations of whether
extraneous offenses or actions fell into one of the six categories of exceptions
identified in Rule 404(b) in favor of a more general analysis of whether the
evidence had relevance apart from character conformity. We held that a party may
introduce such evidence when it logically serves to make more probable or less
probable an elemental fact or an evidentiary fact that inferentially leads to an
elemental fact. Montgomery, at 387. Using this standard, the evidence was
relevant to prove identity.


   This, however, does not end the inquiry. We must next consider whether the
probative value of this evidence was substantially outweighed by its prejudicial
effect. See Montgomery, at 391-393.


   The traditional rule in regard to the admission of extraneous acts for the purpose
of showing identity is that the acts sought to be admitted must be so similar to the
offense charged that the accused's acts are marked as his handiwork, that is, his
"signature" must be apparent from a comparison of circumstances in both cases. 
Beets v. State, 767 S.W.2d 711, 740 (Tex. Crim. App. 1987). See also Owens v.
State, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992); Messenger v. State, 638
S.W.2d 883 (Tex. Crim. App. 1982) and Collazo v. State, 623 S.W.2d 647 (Tex.
Crim. App. 1981). Evidence of an extraneous act which is sought to be admitted
for the purpose of proving identity must demonstrate a much higher degree of
similarity to the charged offense than extraneous acts offered for other purposes
such as intent. Plante, at 493. This is because without such a high degree of
similarity, the probative value of such evidence would be substantially outweighed
by its prejudicial effect. Beets, at 741; Owens, at 915; Messenger, at 886;
Collazo, at 648.



Id. at 345-46.

 Without question there are some general similarities between the two offenses, but
general similarities are wholly innocuous if such features are common to many cases of burglary. 
Lazcano, 836 S.W.2d at 659. "It is not enough to say the offenses are sufficiently similar. 
Rather, the offenses must be distinctively similar." Id. The instant "similar" facts do not provide
evidence of actions so unusual and distinctive and so nearly identical to the charged offense as to
amount to a "signature" of appellant so as to authorize the admissibility of the extraneous act for
the purpose of proving identity. Bishop, 869 S.W.2d at 346; Lazcano, 836 S.W.2d at 659. The
prejudicial effect of such evidence substantially outweighed any probative value it might have had.

 Where there is error, reversal of the conviction is mandated unless it is shown
beyond a reasonable doubt that the error made no contribution to the conviction or punishment. 
Tex. R. App. P. 81(b)(2). In the analysis of this rule, the focus of the reviewing court is not upon
the propriety of the outcome of the trial but the integrity of the process leading to the conviction. 
Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). An appellate court does not
determine harmlessness by examining whether the evidence overwhelmingly supports a verdict
of guilty; rather the court should calculate the error's probable impact on the jury in the light of
the existence of other evidence. Anderson v. State, 817 S.W.2d 69, 72 (Tex. Crim. App. 1991). 
To reach such a determination, the appellate court should first isolate the error and all its effects
and then ask whether a rational trier of fact might have reached a different result but for the error
and its effects. Harris, 790 S.W.2d at 588. In performing the isolating analysis, the reviewing
court examines the source of the error, the extent to which the State emphasized the error, and
the error's possible collateral implications. Id. at 587.

 The error was the admission of the extraneous act. The evidence offered merely
showed appellant's apprehension and arrest in connection with a burglary other than the charged
offense. No evidence of conviction was presented before the jury. Examining the other evidence
before the jury, it was clear that appellant had had prior difficulties with law enforcement
agencies. There was other unobjected-to testimony that when the officers examined the criminal
record of the accomplice witness Goodall, they found appellant's name as a person associated with
Goodall in burglaries. Appellant's mug shot was introduced into evidence without objection. 
Officer Hardage, a patrol officer, testified that appellant's photograph was in her files or that she
had seen it before her encounter with appellant. A defense witness, Betty Sutterfield, was a
hearing officer with the Texas Department of Criminal Justice. She testified that on June 14,
1993, she conducted a revocation of parole hearing. While the court did not permit her to testify
whose hearing it was, the evidence showed that appellant was present with his attorney; that when
Sutterfield was trying to determine if Goodall was a "fearful" witness, appellant was removed
from the hearing room; and that Goodall eventually testified as to his relationship with appellant
and about the instant burglary which was relevant to the hearing. In applying the harmless error
test of Harris, we conclude beyond a reasonable doubt that the error did not contribute to
appellant's conviction in light of the entire record and the showing that the State did not emphasize
the error. Moreover, we conclude beyond a reasonable doubt that the error did not contribute to
appellant's punishment. Appellant entered a plea of "true" to all of the enhancement allegations. 
The record proof showed that one of the prior convictions was for a burglary committed on
February 5, 1991 in Travis County. Point of error three is overruled.

 Appellant's fourth point of error contends that the trial court erred in "failing to
strike prejudice[d] venireperson." Appellant apparently urges that the trial court failed to grant
a challenge for cause. Courts do not "strike" prospective jurors. The record reflects that
Raymond Contreras was a venireman in the instant case. During the voir dire examination of the
jury panel, Contreras was asked by appellant's counsel if he believed that a person who is indicted
is probably guilty. Contreras answered, "Yes." Counsel quickly moved on to the next
venireperson. No objection, challenge, or motion was made. At the conclusion of the voir dire
examination, several veniremen including Contreras were called before the bench. The trial court
inquired about Contreras's answer, explained the law, and asked if Contreras could follow a jury
instruction not to consider the indictment as any evidence of guilt. Contreras stated that he now
understood the law and could follow it and set aside any "feelings." Appellant's counsel asked
an additional question, but made no challenge for cause or requested relief of any kind. Appellant
later exercised a peremptory challenge against Contreras. By failing to challenge for cause,
appellant has presented nothing for review. See Tex. R. App. P. 52(a). Moreover, if he had
challenged Contreras for cause, there would be no merit to appellant's contention. A prospective
juror is not disqualified where his answers on voir dire examination show that he can follow the
law and set aside any preconceptions. Hathorn v. State, 848 S.W.2d 101, 110 (Tex. Crim. App.
1992), cert. denied, 113 S. Ct. 3062 (1993); Mooney v. State, 817 S.W.2d 693, 701 (Tex. Crim.
App. 1991); Bell v. State, 724 S.W.2d 780, 796-97 (Tex. Crim. App. 1986); see also Purtell v.
State, 761 S.W.2d 360, 366 (Tex. Crim. App. 1988), cert. denied, 490 U.S. 1059 (1989). Point
of error four is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Powers, Jones and Onion*

Affirmed

Filed: August 16, 1995

Do Not Publish




* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   See Tex. Penal Code Ann. § 30.02(a)(1) (West 1994).
2.   Tex. R. Crim. Evid. 404(b) provides:


   (b)  Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts
is not admissible to prove the character of a person in order to show that he acted in
conformity therewith. It may, however, be admissible for other purposes, such as
proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident, provided, upon timely request by the accused,
reasonable notice is given in advance of trial of intent to introduce in the State's case
in chief such evidence other than that arising in the same transaction.
3.   Rule 403 of the Texas Rules of Criminal Evidence provides:


Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence.
4.   The record would indicate that in 1991 appellant was approximately 25 years of age.
5.   At the punishment stage of the trial before the trial court, the State offered record evidence
of a burglary conviction which occurred on February 5, 1991, as part of appellant's prior criminal
record.