Affirmed and Majority and Concurring Opinions filed January 19, 2006









Affirmed and Majority and Concurring Opinions filed January 19, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01298-CR

____________

 

GLENN THOMAS
PRINCE,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 892,174

 



 

M A J O R I T Y   O P I N I O N

A jury convicted appellant of capital
murder, and the trial court sentenced him to life in prison.  Appellant raises six issues on appeal.  In his first four issues, appellant argues
the trial court erred by:  (1) admitting
evidence of two extraneous offenses; (2) limiting defense counsel=s
cross-examination of two State witnesses; (3) excluding a third party
confession; and (4) allowing the State to argue the jury could use the fact
appellant committed two extraneous offenses as evidence of his guilt in the
charged offense.  In issues five and six,
appellant argues the evidence is legally and factually insufficient to sustain
his conviction.  We affirm.








Factual and
Procedural Background

On March 13, 1982, at approximately 1:30
a.m., Cao Thanh Nguyen was found murdered in a convenience store.  A few potential customers entered the store
following the murder, discovered the victim=s body, and called
the police.  One of the customers noticed
the register alarm was sounding.  An
employee at a service station across from the store testified that at
approximately 1:50 on the morning of the murder, she heard tires squealing and
saw a car rapidly depart from the convenience store.  

Police who investigated the murder
contacted the district manager of the convenience store and asked him to come
to the store and turn off the register alarm. 
Only coins remained in the register, but officers found cash in the victim=s pocket.  At the time of trial, the manager could not
remember how much money was taken, but testified that store clerks were
instructed to keep only $35.00 in the register to reduce robberies.  Although an incident report might have been
filed by the corporate owner of the convenience store, that corporation no
longer exists so any reports have been destroyed.  The investigating officers collected
fingerprint evidence, blood, and other evidence from the scene, but were unable
to identify the person responsible for the murder.

The case was assigned to the Harris County
cold case squad in May, 1999.  DNA
analysis was performed on the blood samples and the crime laboratory determined
that three blood samples from the floor and the victim=s shoe did not
match the victim=s blood type.  Appellant became a suspect after the DNA
profile of the unknown samples was processed in the computer system of the
Texas Department of Public Safety. 
Police obtained a warrant for samples of appellant=s blood and
saliva.  The three blood samples from the
crime scene were determined to be consistent with appellant=s DNA
profile.  Appellant was arrested, tried,
and convicted of capital murder. 

 

 








Discussion

I.        Extraneous
Offenses

In issue one, appellant contends the trial
court erred in admitting evidence of two extraneous offenses at the guilt B innocence phase
of trial.  During the guilt B innocence phase
of the trial, after the State=s DNA expert was
cross-examined regarding possible contamination of the DNA sample, the State
sought to introduce evidence of two extraneous robberies appellant committed a
decade after the present offense.  The
State argued that the defense, through cross-examination of the State=s witnesses, had
offered defensive theories that the DNA evidence was contaminated and that the
murder did not occur during the commission of a robbery.  Specifically, the State argued that Athe defense . . .
opened the door on the issue of motive, intent, mistake as to the robbery and
also identity as to the individual through cross-examination of the DNA expert.@  The State then described the similarities
between the 1982 capital murder and the two 1992 robberies and explained the
two extraneous 1992 offenses by appellant were offered to show intent, lack of
mistake, and to rebut the defensive theory that the DNA results may be mistaken
due to contamination.  

Appellant objected to the admission of the
extraneous offense evidence pursuant to Texas Rules of Evidence 403 and 404 as
follows:

I object to either
of those 1992 aggravated robberies.  I
object that they are not relevant.  I
object that their prejudice outweighs any probative value; that they are
inadmissible character evidence as per Texas Rules [sic] of Evidence 404 and to
be tried as a criminal generally violates [appellant=s] rights to due
process through both the State and Federal Constitution.








The trial court found the extraneous
offenses were relevant, that their probative value outweighed their prejudicial
value, and they tended to show motive, intent, opportunity, and lack of
mistake.  The trial court granted
appellant a running objection to the evidence on extraneous offenses.  At defense counsel=s request, the
trial court instructed the jury they could only consider evidence of the
extraneous offenses Ain determining the motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or
accident of the defendant, if any, in connection with the offense, if any,
alleged against him in the indictment and for no other purpose.@  The extraneous offense evidence is summarized
as follows:

Lam Nguyen 

On December 15, 1992, Lam Nguyen was the
cashier at a convenience store on Maxey Road. 
That morning appellant entered and asked for cigarettes.  Nguyen informed him that he did not have any
and appellant left.  Shortly thereafter,
appellant re-entered the store, and asked to use the restroom.  Nguyen informed him they did not have a
public restroom and appellant left. 
Nguyen turned to wash his hands at a sink behind the front counter when
he heard a noise.  He turned and saw
appellant with a knife.  When appellant
demanded the money, Nguyen bent down and said, AWhere is my gun?@  Appellant was frightened, ran out of the
door, and drove off very quickly.  Nguyen
recorded the license plate number, called the police, and made a report.  Later, after Nguyen identified appellant in a
line-up, appellant was tried and convicted. 


Jennie Estrada

On December 16, 1992, Jennie Estrada was a
clerk at convenience store in Southeast Houston.  Appellant entered the store at night and
asked to use the restroom.  Estrada
explained to him that they did not have a public restroom.  Appellant then asked about an older Asian man
who worked at the store, and Estrada informed him that Nahija was not working
at the time.  Appellant left and later
returned with his hand behind his back, and asked for cigarettes.  Appellant then raised a crowbar in a
threatening manner and Estrada backed up and grabbed the phone to call the
police.  Appellant hit the no-sale button  on the register, it opened, and he took all
of the cash, but not the coins. 
Appellant then left the store and drove off in a car.  Thereafter, Estrada identified appellant in a
line-up.  

 








A.      Rule
404

Generally, evidence of a person=s character or
character trait is not admissible for the purpose of proving action in
conformity therewith on a particular occasion. 
Tex. R. Evid. 404(a).  Evidence of other crimes, however, may be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.  Tex.
R. Evid. 404(b).  Thus, identity,
intent, and the rebuttal of defenses are valid purposes for admitting evidence
pursuant to Rule 404(b).  Johnson v.
State, 68 S.W.3d 644, 651 (Tex. Crim. App. 2002) (extraneous offenses were
relevant to establish a scheme of robbing to show that the murder was committed
during the course of the robbery to support a capital murder indictment).  

If the trial court determines the offered
evidence has relevance apart from or beyond character conformity, it may admit
the evidence and instruct the jury the evidence is limited to the specific
purpose the proponent advocated.  Montgomery
v. State, 810 S.W.2d 372, 387B88 (Tex. Crim.
App. 1990).  Questions of relevancy should be left
largely to the trial court, relying on its own observations and experience, and
the conviction will not be reversed absent an abuse of discretion.  Moreno v. State, 858 S.W.2d 453, 463
(Tex. Crim. App. 1993).

B.      Intent

For the extraneous act to be admitted, the
State must show it is relevant to a factor of consequence contested in the
case.  Rankin v. State, 974 S.W.2d
707, 709 (Tex. Crim. App. 1996).  Intent
is a fact of consequence when the indictment requires the State to show beyond
a reasonable doubt that a defendant committed an act with a specific intent.  Morgan v. State, 692 S.W.2d 877, 880
(Tex. Crim. App. 1985).  In this case,
the indictment required the State to prove beyond a reasonable doubt that
appellant killed the store clerk with the intent to commit a robbery.  Thus, appellant=s intent to commit
robbery was a fact of consequence.








An extraneous act is relevant if it serves
to make an elemental fact more or less probable.  Montgomery, 810 S.W.2d at 387B88.  The mode of committing the offenses and the
circumstances surrounding the offenses in this case are sufficiently similar
for the extraneous offenses to be relevant to intent.  Id. 
The primaryindicted and extraneous offenses were similar in that: (1)
all three offenses were committed with a blunt instrument or a knife; (2) all
three offenses were committed at convenience stores; (3) all three offenses
were committed in Harris County; (4) all three offenses were committed by
appellant, alone; (5) the two completed robberies resulted in the coins not
being taken; (6) in all three offenses, nothing was stolen from the store
clerk; and (7) in all three offenses appellant drove away very quickly.  Because appellant=s subsequent
conduct made it more probable that he intended to commit robbery at the time
the murder was committed, evidence of that conduct was relevant.

C.      Remoteness

Appellant further contends the extraneous
offenses were not admissible because they were committed more than ten years
after the offense for which he was indicted. 
Rule 404, however, contains no time limitation.  Templin v. State, 711 S.W.2d 30, 34
(Tex. Crim. App. 1986).  The rules
of evidence impose time limitations on some evidence, such as prior convictions
used to impeach a witness=s testimony.  Tex.
R. Evid. 609.  Rule 609 contains a
general limitation of 10 years for criminal convictions offered Afor the purpose of
attacking the credibility of a witness.@  That rule does not apply here because the
extraneous offense evidence was not offered to attack a witness=s
credibility.  The factors of similarity
and remoteness of extraneous offenses are important only as to the relevancy
and probative value of the offered evidence of extraneous offenses.  Linder v. State, 828 S.W.2d 290, 297
(Tex. App.CHouston [1st Dist.] 1992, pet. ref=d). 








A line of cases decided before September
1, 1986, the date the Texas Rules of Evidence were first enacted, held that
extraneous offenses committed more than a few years before the charged offense
were too remote to be admissible.  See
Bachhofer v. State, 633 S.W.2d 869, 872 (Tex. Crim. App. 1982) (extraneous
offense committed four years and four months prior to instant offense too
remote); James v. State, 554 S.W.2d 680, 683 (Tex. Crim. App. 1977)
(sexual assault committed two years and nine months prior to instant offense
too remote); Robledo v. State, 480 S.W.2d 401, 402 (Tex. Crim. App.
1972) (forgery committed four years and three months prior to instant offense
too remote).  

Those cases are distinguishable on their
facts.  In Bachhofer, the alleged
extraneous offense took place in another state, and there was no final
conviction for the extraneous offense. 
633 S.W.2d at 872.  In James,
the court emphasized that the extraneous offense was committed by appellant
when he was younger than thirteen years old and took place in a different
state.  554 S.W.2d at 683.  In Robledo, the court=s decision was
based on a specific forgery statute that excluded remote offenses.  480 S.W.2d at 402.  Another and more important distinguishing
characteristic of these earlier cases is that they were tried under common law
principles, Awhich tended to favor exclusion of
evidence.@  Montgomery,
810 S.W.2d at 375.  The court noted in
Montgomery that the Anew rules favor the admission of all
logically relevant evidence.@  Id.; see also Lavarry v. State,
936 S.W.2d 690, 695 (Tex. App.CDallas 1996, pet.
ref=d) (an
unadjudicated ten‑year‑old extraneous offense was not so remote as
to bar its admission).

In this case, two extraneous offenses were
admitted to show appellant intended to commit a robbery when he murdered the
store clerk.  The fact that those
offenses were committed ten years after the murder does not affect their
admissibility on the issue of intent. 
The extraneous acts were similar to the charged offense and were
probative evidence that appellant intended to rob the convenience store.

D.      Rule
403








Although admissible under Rule 404(b), the
same evidence may be inadmissible under Rule 403 if the probative value of such
evidence is substantially outweighed by unfair prejudice.  When a further objection is made to
extraneous offense evidence under Rule 403, the trial court must determine
whether the danger of undue prejudice outweighs the probative value of the
evidence.  The relevant criteria in
making such a determination include the following factors:

(1)     how compellingly the extraneous offense
evidence serves to make a fact of consequence more or less probable, a factor
which is related to the strength of the evidence presented by the proponent to
show the defendant in fact committed the extraneous offense;

(2)     the potential the other offense evidence
has to impress the jury Ain some irrational but nevertheless
indelible way@;

(3)     the time the proponent will need to develop
the evidence, during which the jury will be distracted from the consideration
of the indicted offense;

(4)     the
force of the proponent=s need for this evidence to prove a fact
of consequence, i.e., does the proponent have other probative evidence
available to him to help establish this fact, and is this fact related to an
issue in dispute.

Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App.
1999); Montgomery, 810 S.W.2d at 390. 
We review the trial court=s ruling on
whether to exclude evidence of other crimes under Rule 403 by an abuse of
discretion standard.  Montgomery,
810 S.W.2d at 391.  








Keeping the above standards in mind, we
examine whether the trial court abused its discretion in admitting the
extraneous offense evidence in this case. 
First, the extraneous offenses made intent to commit robbery or
attempted robbery in 1982 more probable and rebutted appellant=s theory that the
money missing from the register was either in the clerk=s pocket or a
result of miscalculation.  Second,
although extraneous offenses always possess the potential to influence the
jury, any impermissible inference of character conformity can be minimized
through a limiting instruction.  Lane
v. State, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996).  In this case, the trial court gave a limiting
instruction before the evidence of the extraneous offenses was presented to the
jury, and in the jury charge.  Third, the
prosecutor used a minimal amount of time to develop evidence of the extraneous
offenses.  Significantly less than ten
percent of the testimony in the State=s case-in-chief
was used to develop the extraneous offenses. 
See id. (holding extraneous offense testimony constituting less
than twenty percent of the testimony in the State=s case-in chief is
not excessive).  Finally, the State
needed the extraneous offense evidence to show intent to commit robbery.  Appellant attacked the evidence of robbery
claiming the money in the clerk=s pocket could
have been the missing money from the register or the missing money from the
register could have been the result of miscalculation.  Thus, intent to commit robbery was a contested
issue, and the extraneous offense evidence was necessary to show an intent to,
or scheme of, robbing convenience stores. 
Under these circumstances, the probative value of the extraneous offense
evidence outweighs any unfair prejudicial effect. The trial court did not abuse
its discretion in admitting the extraneous offenses.  Appellant=s first issue is
overruled.

E.      Jury
Argument Regarding Extraneous Offenses

Appellant argues in his fourth issue that
the trial court erred in allowing the State to argue to the jury that they
could use the extraneous offenses as evidence of his guilt in the charged
offense.  Specifically, the State argued:


You also have the
fact that you have heard other offenses. 
There is a special instruction in the charge as to how you are to
consider that.  You can take that into
consideration for motive, intent, and it can go towards whether you believe
that we proved beyond a reasonable doubt a robbery was committed in this
particular offense and I submit to you that it was. 

The trial court overruled appellant=s objection to
this argument, and referred the jury to the charge.  








Appellant=s issue four is
predicated on a successful resolution of his first issue.  Appellant argues that because the evidence of
extraneous offenses was inadmissible, the State could not argue those offenses
in closing argument.  To be permissible,
the State=s jury argument must fall within one of
the following four general areas:  (1)
summation of the evidence; (2) reasonable deduction from the evidence; (3)
answer to argument of opposing counsel; or (4) plea for law enforcement.  Felder v. State, 848 S.W.2d 85, 94‑95
(Tex. Crim. App. 1992). 

In the present case, the State=s jury argument
could reasonably be deemed as summation of the evidence or a reasonable
deduction from the evidence.  The
prosecutor properly informed the jury the could consider the extraneous
offenses for limited purposes. 
Furthermore, the instruction by the trial court to follow the charge
would cure any error.  Cf. Clarke v.
State, 785 S.W.2d 860, 875  (Tex.
App.CFort Worth  1990), affirmed, 811 S.W.2d 99 (Tex.
Crim. App. 1991) (argument not referring to limited nature of admissibility of
extraneous offenses held improper). 
Because the extraneous offenses were properly admitted for limited
purposes, the State=s argument was a reasonable deduction from
the evidence.  Appellant=s fourth issue is
overruled.

II.       Cross-examination
of State=s Witnesses

In issue two, appellant argues the trial
court erred in limiting the cross-examination of State=s witnesses John
Martin Smith and Patrick Brooks.  Smith
and Brooks were the customers who discovered the body of the store clerk.  Appellant argues his main defense was that he
was not guilty of capital murder because there was no evidence that any murder
occurred during the commission of an aggravated robbery or attempted aggravated
robbery.  Appellant contends the State
had very little evidence, if any, to link appellant to a robbery, and the State
wanted the jury to believe that appellant either stole money from the register
or attempted to steal money from the register. 
One of the ways the State tried to accomplish this was to have the jury
believe appellant at least attempted to open the register by hitting keys on
the register that set off the alarm. 








Through cross-examination, appellant
sought to show the register alarm began sounding after John Smith went into the
back room to look at the victim, indicating that it was at that time an attempt
to open the register occurred.  To show
that Brooks may have triggered the register alarm, appellant sought to
cross-examine both John Smith and Patrick Brooks regarding a statement Brooks
made when he entered the store.  Brooks
said, AHey Wong Tong@ AIf you don=t get out here, I=m gonna rob ya.@  The State objected, and the trial court
sustained the objection finding the prejudicial effect outweighed the probative
value of the statement. 

Appellant argued at trial that testimony
regarding the statement by Smith was admissible under the statement against
penal interest exception to the hearsay rule. 
See Tex. R. Evid. 803(24).  On appeal, appellant contends he was denied
his sixth amendment right to confront the witnesses against him.  See U.S. Const. amend. VI.  The
Confrontation Clause provides criminal defendants with the right to physically
face those who testify against them and the right to conduct cross‑examination.  Delaware v. Fensterer, 474 U.S. 15, 18B19, 106 S.Ct. 292,
294, 88 L.Ed.2d 15 (1985).  To preserve
error on Confrontation Clause grounds, an objection must be made at trial as
soon as the basis for such objection becomes apparent.  Wright v. State, 28 S.W. 3d 526, 536
(Tex. Crim. App. 2000).  An objection on
hearsay does not preserve error on Confrontation Clause grounds.  Paredes v. State, 129 S.W.3d 530, 535
(Tex. Crim. App. 2004).  Appellant did
not object on Confrontation Clause grounds. 
Because appellant=s issue on appeal does not comport with
the objection made at trial, he has waived error.  See Banda v. State, 890 S.W.2d 42, 62
(Tex. Crim. App. 1994).  Appellant=s second issue is
overruled.

III.      Third
Party Confession

Appellant next argues the trial court
erred when it excluded the third party confession of James Edward Lyles
II.  Appellant argues the statement by
Lyles that another person, Bobby Welch, admitted he committed this murder was
admissible under the hearsay exception for statements against penal
interest.  See Tex. R. Evid. 803(24).  The trial court ruled there was not enough
corroborating evidence to allow Lyles=s statement to be
admitted.

Counsel for appellant stated outside the
presence of the jury that Lyles=s testimony would
be as follows:








[Defense counsel:] If I were allowed to call James Edward Lyles,
II, to the witness stand in the trial of this case, he would under oath testify
that he was in Pasadena, Texas, . . . in July of 1982.  

In July of 1982, he was in the presence of an individual
that he called ASpider@ and he was in the
presence of an individual by the name of Bobby Welch and that three of them
went into a UtoteM store and that inside this UtoteM store, the manager of the
UtoteM store was an Oriental, didn=t have any thumbs,
and he was trying to get the change made for this  Bobby Welch guy and he was moving slow.  Bobby Welch didn=t like it and had
some words with that individual who had words back with him.  At that point in time, Bobby Welch pulled a
knife out and told that individual that he was going to gut him just like he
did the clerk over on . . . .  - - on
Richey, that in conversations with those individuals later, he determined what
he was talking about was this capital murder that we=re in trial on
today that occurred on Richey Road on March 12, slash, 13, 1982. 

In response, the State argued that if
Lyles testified, he would be impeached with a statement Lyles made in
1984.  In the 1984 statement, Lyles
stated he was arrested and in the custody of the Pasadena Police Department
when he told an officer that he wanted to talk to a detective about a
murder.  Lyles told the detective that he
knew a man by the name of Bobby Welch who made a statement about killing a
clerk in Pasadena.  

Lyles said he and Welch went into a
convenience store where an Asian clerk was working.  The clerk and Welch argued about something,
and after they left the store, they both made disparaging remarks about the
clerk and Asians.  At that point, Welch
said to Lyles, AThat is why I gutted the son of a bitch on
Richey.@  The State argued nothing else was said about
the clerk being killed, but Lyles might also testify that Welch was a Aknife freak,@ who always
carried four or five knives with him. 
The State informed the trial court that Lyles had one prior conviction,
assault on a woman.  The State also
proffered to the court that Welch=s DNA did not
match the DNA found at the crime scene.








The trial court held there was not enough
corroborating evidence to allow Lyles to testify as to Welch=s statement.  We review the trial court=s decision to
exclude this hearsay evidence of a statement against penal interest under an
abuse of discretion standard.  Cunningham
v. State, 877 S.W.2d 310, 313 (Tex. Crim. App. 1994). 

A statement tending to expose the
declarant to criminal liability is not admissible unless corroborating
circumstances clearly indicate the trustworthiness of the statement.  Tex.
R. Evid. 803 (24).  Factors
relevant to this inquiry include: (1) whether the guilt of the declarant is
inconsistent with the guilt of the defendant; (2) whether the declarant was so
situated that he might have committed the crime; (3) the timing of the
declaration; (4) the spontaneity of the declaration; (5) the relationship
between the declarant and the party to whom the statement was made; and (6) the
existence of independent corroborative facts. 
Woods v. State, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004). 

In the present case, the guilt of the
declarant is inconsistent with the guilt of appellant.  There is no evidence in the record indicating
the declarant=s location or situation at the time of the
murder.  The declaration was made several
months after appellant was arrested for the murder.  The statement was made by the declarant to
either the clerk of the store in the presence of his acquaintances or to some
of his acquaintances in their car after he became angry at a convenience store
clerk for taking a long time to make change following a purchase.  This inconsistency is the result of the
declarant making two different statements. 
The statement did not indicate that the declarant had intimate
familiarity with the crime.  It merely
revealed general facts that could have been in the news reports of the crime or
arrest.  Furthermore, following the
statement, Welch was investigated and his DNA did not match the DNA at the
crime scene. 

Accordingly, the six factors and physical
evidence establish that the statement was unreliable.  Because there were insufficient corroborating
circumstances to indicate the trustworthiness of Welch=s statements, we
conclude appellant failed to show the trial court abused its discretion.  Appellant=s third issue is
overruled.

 








IV.      Legal
and Factual Sufficiency of the Evidence

In issues five and six, appellant argues
the evidence is legally and factually insufficient to sustain his conviction
for capital murder.  Appellant contends
the evidence is legally insufficient because the State failed to prove, beyond
a reasonable doubt, that appellant committed murder while in the course of
committing or attempting to commit the offense of aggravated robbery.  Appellant also contends the evidence is
factually insufficient because no rational jury could have found appellant
committed murder while in the course of committing or attempting to commit the
offense of aggravated robbery.

When conducting a legal sufficiency
review, we view all of the evidence in the light most favorable to the verdict
and then determine whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307,
319 (1979).  The jury, as the trier of
fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  When conducting
a factual sufficiency review, we view all of the evidence in a neutral light
and determine whether the jury was rationally justified in finding guilt beyond
a reasonable doubt.  See Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  There are two ways in which the evidence may
be factually insufficient:  (1) if the
evidence supporting the verdict, when considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt; and (2) weighing both
evidence supporting the verdict and evidence contrary to the verdict, the
contrary evidence is strong enough that the beyond-a-reasonable-doubt standard
could not have been met.  Id. at
484B85.  In conducting the factual-sufficiency review
we must give appropriate deference to the jury=s findings, and we
may not substitute our judgment for that of the jury.  Id. at 482. 








A person commits the offense of capital
murder if he commits murder as defined under Section 19.02(b)(1) of the Texas
Penal Code and he intentionally commits the murder in the course of committing
or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault,
arson, obstruction or retaliation, or terroristic threat.  Tex.
Pen. Code Ann. ' 19.03(a)(2).  Appellant was charged with committing murder
in the course of committing or attempting to commit robbery.  The evidence presented in this case is both
legally and factually sufficient to support appellant=s conviction of
capital murder.  John Smith testified
that he did not know when the register alarm was first triggered, but he noticed
it when he was searching near the register for a flashlight to check the victim=s vital
signs.  Patrick Brooks did not recall
hearing the register alarm.  The register=s alarm was
sounding when the convenience store=s district manager
entered the store.  He turned the alarm
off at the request of the police.  No
bills were found in the register following the murder.  The district manager testified that he
calculated the amount of money missing at the time of the offense, but could
not recall at the time of trial.  On
cross-examination, the manager testified that the money was not there and
agreed he could not tell whether it was the result of mismanagement or someone
taking the money.  Several of the police
officers and crime scene investigators heard the register alarm.  The fingerprints on the register, however,
did not match appellant=s prints. 
DNA comparisons showed appellant=s blood was found
on or near the victim=s body.

Viewing the evidence in the light most
favorable to the verdict, we hold the evidence was legally sufficient for a
rational jury to find the essential elements of capital murder beyond a
reasonable doubt.  Viewing the evidence
in a neutral light, we observe that the jury decided in this case to believe
the testimony elicited by the State regarding the robbery and to disbelieve
appellant=s cross-examination regarding the clerk
taking the money or miscalculation of the money in the register.  Because the jury is the sole judge of the
weight and credibility of the witness testimony, and because the proof of guilt
was not so obviously weak as to undermine confidence in the jury=s determination of
guilt beyond a reasonable doubt, or so greatly outweighed by contrary proof as
to indicate that the beyond-a-reasonable-doubt standard could not have been
met, we hold the evidence was factually sufficient to support the verdict.  Appellant=s fifth and sixth
issues are overruled.

 








The judgment of the trial court is
affirmed.

 

 

 

/s/      John S. Anderson

Justice

 

Judgment
rendered and Majority and Concurring Opinions filed January 19, 2006.

Panel consists
of Justices Anderson, Hudson, and Frost. (Frost, J. Concurring)

Publish C Tex.
R. App. P. 47.2(b).