

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00219-CR

_____

JOHN WEST, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 32151

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

A Hunt County jury convicted John West of indecency with a child by contact.[1] As a result, West was sentenced to twenty years' imprisonment. On appeal, West contends (1) that the evidence was not sufficient to support the jury's verdict of guilt and (2) that the trial court erred by allowing extraneous-offense evidence from two witnesses who testified to abusive touching by West when they were children.

Because we find (1) that the evidence was sufficient to prove West caused the victim to touch West's genitals and (2) that there was no abuse of discretion in admission of the extraneous-offense evidence, we affirm the trial court's judgment.

## I.      Factual Background

During Gloria's[2] freshman year of high school, she dated a boy named Alexander. One night, Alexander's mother, Angela, was checking his text messages, as was her common practice. Angela came across an alarming message from her son to Gloria. Angela testified, "[The text said] something to the effect of, if you do that I'm going to tell everybody about you and your uncle or what happened with you and your uncle . . . ." Being concerned, Angela questioned Alexander about the message and eventually made an anonymous report to Child Protective Services (CPS). As a result, CPS began an investigation and interviewed Gloria; she described inappropriate contact by West, her uncle, when she was about ten and thirteen years old.

---

[1]*See* TEX. PENAL CODE ANN. § 21.11(a)(1). The same indictment charged West with aggravated sexual assault of a child. The jury acquitted West of that count.

[2]In this opinion, we refer to the persons who were minors when the offense was committed by pseudonyms to protect their identities. *See* TEX. R. APP. P. 9.10.

West was indicted for (1) aggravated sexual assault and (2) indecency with a child by contact. At trial, Gloria testified to two incidents with West which were the basis of the State's charges. First, Gloria described staying with West and his wife when Gloria was ten years old. After playing, Gloria needed a shower. When she finished the shower, West came in the bathroom, toweled her off, and helped Gloria get dressed. Following the shower, Gloria wanted to take a nap. West told Gloria she could sleep in his bed. West then climbed in bed next to her and began to "cuddle" her. Gloria at first thought this "was like normal because [her] mom did it." But West then began touching Gloria over and then under her clothing, including her underwear. Gloria got up and ran from the room. As a result, West was angry with her. Gloria told West she "didn't want to do that. [She] didn't even know what was going on."

The second occasion described by Gloria occurred a few years later when she was between the ages of ten and thirteen. Again, Gloria was staying with the Wests. Gloria explained that she took naps often. On this occasion, Gloria had gone in West's bedroom to take a nap by herself. Gloria stated that she was lying in bed with her clothes on, watching TV, and trying to fall asleep. West came to check on her and "got in bed with [her] and he started to like touch [her] again like the first time." West then "told [her] what to do," specifically, "[t]o give him a blow job." The following exchange is pertinent to West's appellate argument:

> Q. [By the State] . . . did the Defendant tell you to do anything else with your hands on him that time or any other time?
>
> A. [By Gloria] No.
>
> Q. No. And so -- so what does -- what is this (indicating)? What did you -- I hate to do this but what does this mean?

3

A. It means to suck his penis.

Q. And because you asked -- because he asked you to do that, [Gloria], did you go ahead and do that?

A. Yes.

When the State asked Gloria what West was doing while she performed oral sex upon him, she answered, "He was fingering me." She clarified, "He put his fingers into my vagina." West also on this occasion tried to put his penis in Gloria's vagina, but was unsuccessful.

Gloria was also questioned about whether her "hands ever touch[ed] his -- parts of his body while [she was] asked to provide oral sex to him?" Specifically, the State asked, "Did your hands ever touch any part of his genitals that you recall at any time?" Gloria answered, "I don't remember."

The State also called Hope Clark to testify. Clark was a forensic interviewer at the Children's Advocacy Center (CAC) in Hunt County when Gloria told the CPS investigator about West's sexual acts. Clark interviewed Gloria at the time of the investigation and was called as a witness to testify about the child's statements. According to Clark, Gloria had told her,

> [West] had made her sit on top of him and tried to put his thing into her but she said he didn't. And she did say that he had touched her inside her body and outside her body and she said she started screaming and moving and so she was able to get off of him.

Clark said Gloria clarified that "thing" meant West's penis. The State then asked Clark if Gloria had clarified her statement that "[West] had touched her inside her body and outside her body." Clark responded, "I -- I believe that she did clarify that it was her [vagina]. I'm pretty sure she did." When asked to describe Gloria's other statements about any inappropriate touching by West,

4

Clark answered, "Yes. [West] did make [Gloria] touch him -- I want to say that she said she touched his thing but I'm -- I'm not sure." The State then asked for clarification:

> Q.     [By the State] And as you sit here today, did that -- did she specify what part of him she was touching?

> A.     [By Clark] Yes. His penis.

The State also presented testimony from two witnesses who both described similar inappropriate touching by West when they were young.[3] The first was Florence, Gloria's mother. Florence was the younger sister of West's wife, Deana. Florence was about ten years younger than Deana. Florence told of an occasion on which West came by her home unexpectedly one day, when she was in fifth or sixth grade. She told the jury that West tickled her, then lifted her shirt, grabbed her breasts, and said, "Boobies." Shocked, Florence rebuffed his grope. She stated, "[I k]ind of kicked him, you know, just moved and got him off me." West then "made an excuse and left real quick." Florence did not tell anyone about this incident.

When she was about fourteen or fifteen, Florence said West did the same thing again. He began tickling her, then straddled her on the kitchen floor, and then "lifted [her] shirt and touched [her] breasts and kind of squeezed on them . . . ." This time, Florence told her parents about the incident. Yet, she "begged them actually not to say anything to [her] sister," Deana, who was pregnant with West's child.

Janice, the second witness, had known West's family since she was a child. Janice was a contemporary of West's children, and like them, she was often babysat by West's in-laws. Janice

---

[3]This testimony was offered under the authority of Article 38.37 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37.

5

explained that during a family outing at Lake Tawakoni, when she was about nine years old, West took turns "launching" Janice and the other children through the air. Each child would take a turn on West's leg, and he would launch or throw the child up in the air, and then they would splash back into the water. On her first turn, Janice said she "felt something in the crotch area of [her] bathing suit and kind of under and [she] thought maybe a fish or something creepy had swam up so [she] jumped off really quick . . . ." This sensation, with her waist under water, "started on the outside but then inside" of her bathing suit. On her second turn to jump or launch, Janice said West's "fingers went up inside" her "vaginal area," and she "froze." Janice said she then jumped off West's knee and swam to the shore. She said West told her later that "if [she] ever told anybody that he would get [Janice's family] kicked out of [their] house because his grandparents owned it." Janice never told anyone in the family about this incident.[4] She explained that throughout her childhood, West would come around, and when hugging Janice, his hands would often "skim across [her] rear or, you know, arm across the chest."

Ultimately, the jury acquitted West of Count 1, aggravated sexual assault of a child by digital penetration of Gloria's sexual organ, but convicted him of Count 2, indecency with a child by contact.

## II. Evidence is Sufficient to Support Conviction

In his first point of error, West argues that the evidence is insufficient to support the jury's verdict that he committed the offense of indecency with a child by contact. The indictment alleged (1) that West caused Gloria, a child under the age of seventeen, to touch his genitals and (2) that

---

[4]Eventually Janice told each of her two husbands.

West engaged in this conduct to arouse or gratify his sexual desire. *See* TEX. PENAL CODE ANN. § 21.11. Because we find that the evidence is sufficient to prove the acts alleged in the indictment, we overrule West's first point of error.

### A.      Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while deferring to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

7

**B.    Analysis**

We point out that the indictment and the charge of the court alleged that with the requisite mens rea, West caused Gloria "to touch the genitals of the defendant."[5]  West argues that because there was no testimony directly stating that Gloria touched his penis with her hand, the evidence failed to prove an element of the offense.[6]  Yet, the State did not allege exactly how Gloria was made to touch West's genitals.[7]  Nor was it required to do so.  Moreover, "[t]he State is simply required to prove what it alleged." *Curry v. State*, 30 S.W.3d 394, 405 (Tex. Crim. App. 2000).[8]

To that end, the State called Gloria as a witness.  She recounted that West forced her to perform oral sex upon him.  Gloria explained that West told her "[t]o give him a blow job."  She testified that this phrase "means to suck his penis," and she stated that she complied.  Gloria also

---

[5]The Texas Penal Code defines sexual contact as "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person."  TEX. PENAL CODE ANN. § 21.11(c)(2).

[6]West also points to the language used by CAC forensic interviewer Clark.  When relating her session with Gloria, which happened three years before trial, Clark said she had no independent recollection of the interview when contacted about West's trial.  Discussing her session with Gloria, Clark used phrases such as, "I want to say that she said she touched his thing but I'm -- I'm not sure."  According to West, this suggests Clark's memory and testimony are not sufficient to be relied upon by the jury.  Yet, when viewed in the context of her testimony as a whole—the interview was three years prior, Clark had left the forensic interview field about nine months after interviewing Gloria, she reviewed her notes before trial, and she was conclusive on other matters such as Gloria's language for each parties' genitals—such colloquialisms were manners of her speech.  As a result, it was for the jury to evaluate her credibility. *See Cain v. State*, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).  And a therapist who worked with Gloria after the publication of her prior abuse corroborated many of the events Gloria described (oral sex, frequent touching, digital penetration).

[7]Among the definitions of "touch" are (1) "to bring a bodily part into contact with [especially] so as to perceive through the tactile sense:  handle or feel gently [usually] with the intent to understand or appreciate" and (2) "to take into the hands or mouth." *Touch*, MERRIAM-WEBSTER DICTIONARY (11th ed. 2006).

[8]Based on our review of the record, we also note that West never moved to quash the indictment, and he never asked for clarification as to what conduct the State relied on to prove each of its allegations.

8

described how West, on that same occasion, tried to insert his penis in her vagina, but was unable "because [she] was so tiny."

As a reviewing court, we look to "all the evidence in the light most favorable to the prosecution" to determine whether "any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt." *Saxon v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Based on Gloria's testimony alone, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd) ("The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault or indecency with a child."); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Supp.). As a result, we find the evidence sufficient to support the jury's verdict of guilt. We therefore overrule point of error one.

## III. No Error in Admission of Extraneous-Offense Evidence

West next complains of the trial court's admission of testimony from Florence, Gloria's mother, and Janice, both of whom testified about inappropriate touching of them by West when they were girls. West argues that Rule 403 of the Texas Rules of Evidence should have precluded admission of this testimony because the evidence's "probative value [wa]s substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403. We find no abuse of discretion in the trial court's admission of this testimony.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs only

9

if the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### B. Analysis

The trial court must balance these factors "when undertaking a Rule 403 analysis" to challenged evidence:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. . . . Of course, these factors may well blend together in practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (footnote omitted).

The trial court could have reasonably concluded that testimony from Florence and Janice had probative value to the State's prosecution of West. As discussed above, there were some vagaries in the testimony of Gloria and Clark, owing to the length of time since the alleged behavior by West. That two other women alleged somewhat similar groping incidents by West when they were children made it more likely West's acts on Gloria were not accidental. Florence's and Janice's allegations also occurred near the ages of those described by Gloria.

10

As with the probative value, the State had need for Florence's and Janice's testimony. Again, the testimony of Gloria and Clark described events which had occurred three years before trial. Gloria was also reluctant to share these events with others, as she found it difficult to discuss. That Florence and Janice both described unwelcome touches from West at approximately the same age as Gloria when she was accosted by West bolstered a prosecutorial theory hampered by time and being essentially a he-said-she-said case. *See Bradshaw v. State*, 466 S.W.3d 875, 884 (Tex. App.—Texarkana 2015, pet. ref'd).

The trial court could have also felt that the women's testimony would not confuse the jury, distract the jury, or cause the jury to reach a verdict upon an improper basis. The court instructed the jury—at the time of the testimony and in the charge—only to consider the women's testimony if they found beyond a reasonable doubt that West had acted as described. The jury is presumed to follow a trial court's instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *Graham v. State*, 96 S.W.3d 658, 661 (Tex. App.—Texarkana 2003, pet. ref'd).

Likewise, the trial court's instructions presumptively insulated the evidence from being improperly considered by the jury. The instructions given by the trial court directed the jury to consider the prior events only in relation to Gloria's allegations and only if the jury found beyond a reasonable doubt that West had committed them.

As for the last factor, we point out that the State presented testimony from eight witnesses over two and one-half days during its case-in-chief. The State presented about 214 pages of direct examination of prosecution witnesses. Of those 214 pages, only about eighteen pages were spent

11

developing the extraneous-offense testimony. The trial court could have reasonably concluded that the State did not spend an inordinate amount of time presenting this testimony.

West argues that the testimony of Florence and Janice—describing events almost thirty years in the past—was too remote for admission and that it satisfied Texas Rule of Evidence 403's standard for preclusion because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. He cites four cases in support of this argument.[9]

All the cases relied on by West were decided before the adoption of the Texas Rules of Evidence. Common-law case decisions such as those cited by West "tended to favor exclusion of evidence." *Montgomery*, 810 S.W.2d at 375. The Rules of Evidence, on the other hand, "favor the admission of all logically relevant evidence for the jury's consideration." *Id*; *see also Lavarry v. State*, 936 S.W.2d 690, 695 (Tex. App.—Dallas 1996, pet. ref'd) (an unadjudicated ten-year-old extraneous offense was not so remote as to bar its admission).

After reviewing the trial court's admission of extraneous-offense testimony from Florence and Janice under the *Gigliobianco* analysis, we find no abuse of discretion in the trial court's rulings. West's second point of error is overruled.

---

[9]*Bachhofer v. State*, 633 S.W.2d 869, 872 (Tex. Crim. App. [Panel Op.] 1982) (on trial for indecency with a child, error to allow evidence of a prior alleged fondling of child incident where prior allegation was from Oklahoma and more than four years old and where no evidence was presented of a conviction); *Collazo v. State*, 623 S.W.2d 647, 648–49 (Tex. Crim. App. [Panel Op.] 1981) (charged with attempted sexual assault, error to admit evidence of another incident where man accosted woman in parking lot and stole her shoe where such extraneous incident was committed a year later); *James v. State*, 554 S.W.2d 680, 683 (Tex. Crim. App. 1977) (where "[t]wo years nine months and the width of several states intervened between the commission of" the charged offense and the extraneous-offense error to allow admission of the extraneous allegation); *Robledo v. State*, 480 S.W.2d 869, 872 (Tex. Crim. App. 1972) (on trial for forgery of an instrument, error to admit prior forgery conviction that was four years and three months old).

## IV.    Conclusion

For the reasons stated, we affirm the trial court's judgment.


                                    Scott E. Stevens
                                    Justice

Date Submitted:     August 8, 2019
Date Decided:       August 29, 2019

Do Not Publish