Ivary JAMES, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 52861.

Court of Criminal Appeals of Texas.

June 29, 1977.

Rehearing Denied Sept. 14, 1977.

Barry P. Helft, Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Dale G. Markland, and Jim Burnham, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

GREEN, Commissioner.

This appeal is from a conviction for aggravated rape in which the punishment was assessed at ninety-nine years.

■ The record reflects that appellant was fifteen years six and a half months old when the alleged offense was committed on May 13, 1975, and that he was sixteen years four days of age at the time of the trial on November 3, 1975. A supplemental transcript reflects that at a hearing in the Juvenile Court of Dallas County June 17, 1975, prior to the presentment of the indictment herein, with appellant, his attorney and his guardian-ad-litem present, that court made findings in accordance with V.T.C.A. Family Code, Sec. 54.02, and waived jurisdiction of this cause and transferred jurisdiction over appellant "to the appropriate Criminal District Court or District Court of Dallas County, Texas, for proper criminal proceedings and do hereby certify said action." The clerk of the Juvenile Court was directed "to transmit forthwith to the proper Criminal District Court or District Court of Dallas County, Texas, this written order and findings of said Juvenile Court of Dallas County, Texas, and said complaints attached hereto." We conclude that the trial court[1] properly exercised jurisdiction over this cause and over appellant. See V.T.C.A. Family Code, Sec. 54.02. Cf. Bannister v. State, Tex.Cr.App., 552 S.W.2d 124 (1977).

---

1. Criminal District Court No. 4 of Dallas County.

The sufficiency of the evidence is not challenged. The State's evidence reflects that on the morning of May 13, 1975, as prosecutrix, a 45 year old widow, was leaving the door of her apartment, No. 1042, to go to work she noticed someone "peeking through the door" of apartment No. 1045 looking at her. About 5:05 p.m., as she returned from work and, after exiting from her car as she was about to enter the building, appellant assaulted her and, placing a knife at her throat and threatening to "slice" her to pieces, forced her into apartment No. 1045. He told her he was the man who was peeking at her earlier and that he watched her leave and had been waiting for her all day. Then, using force and threatening to inflict imminent serious bodily injury to her, and still holding the knife, he raped her twice and attempted to do so another time. He next bound her hands and feet with portions of her pantyhose and stole money from her purse. Prosecutrix was able to release herself and ran screaming and partly undressed to the parking lot, and then to the office, where she reported the offense. As she was being assisted back to the apartment where she had left some of her clothes, she saw appellant in the custody of a security guard. She then went to a hospital for medical attention.

Appellant, as a witness in his own behalf, denied any knowledge of the rape of prosecutrix. He testified he had moved into apartment 1045, occupied by his brother-in-law, two days prior to the alleged offense. He denied having seen prosecutrix leave the building that morning, stating he stayed in bed until after twelve noon. At about 5:00 p.m. he talked with "a Mexican guy who worked there" at the patio door, being the back door, of his apartment, and then he left through the patio door for a walk. After walking about an hour, and as he was returning, he saw a crowd gathered near his apartment. At this time he was cursed by the crowd, some of whom had bricks and bottles, and he ran. He was arrested shortly after that by a security guard.

Appellant initially complains of the admission of evidence of an extraneous offense committed two years and nine months prior to the instant offense.

After appellant testified, the State offered the testimony of a witness from Tampa, Florida, of a rape committed on her by appellant on August 12, 1972. In the absence of the jury, she testified that on that date in Tampa she had entered her car, the windows being open, after doing some shopping, when appellant, whom she had seen earlier when she had entered a store, approached her and, exhibiting a knife in a threatening manner and making threats to harm her, caused her to permit him to enter the car. He then forced her to drive, eventually, to the "city garbage" location, where, by holding the knife to her throat and threatening to kill her, he raped her on the back seat of the car and stole money from her purse. He then had her take him back to where he had entered her car. At the hearing before the court, appellant objected to this testimony on the ground that appellant was a juvenile at the time of the offense,[2] and could not be impeached with either juvenile convictions or juvenile transactions. His objection was overruled. When the testimony was offered before the jury, appellant prior to its admission additionally objected as follows:

"Judge, at this time for record purposes we're going to object again and further urge that as an extraneous offense this was much too distant for the time that this offense occurred to possibly be considered."

It was the State's theory, as the prosecuting attorney explained at the hearing, that the evidence was admissible "to rebut the defensive theory, to show the intent of the defendant, and to rebut his alibi defense, go to his identity, also, showing a common mode of operation or modus operandi, rebut the defensive theory, show his intent and

2. The appellate record, including records from a Florida juvenile court, introduced before the court only by the State, reflects that appellant was born October 30, 1959 and was twelve years nine months of age when the Florida rape occurred.

the identity, your honor." The prosecuting attorney stated further that the State had no intention of offering evidence before the jury of any conviction of appellant as a juvenile, but only the facts of the offense as "an exception under the extraneous offense rule."

Appellant's objection was overruled, and the witness was permitted to testify before the jury of the details of the 1972 rape on her. No evidence of his conviction in juvenile court was offered to the jury by the State.

Appellant's testimony reflected his theory and defense, and raised the issue of alibi and identity. We quote as follows from the majority opinion in *Cameron v. State*, Tex. Cr.App., 530 S.W.2d 841.

"Evidence that would also prove a separate offense is admissible when offered on the issue of identity only (1) if identity is a controverted issue and (2) if there are distinguishing characteristics common to both the extraneous offense and the offense for which the defendant is on trial. E. G. *Ransom v. State*, 503 S.W.2d 810 (Tex.Cr.App. 1974); *Mitchell v. State*, 503 S.W.2d 562 (Tex.Cr.App. 1974); *Cobb v. State*, 503 S.W.2d 249 (Tex.Cr.App. 1974); *Lee v. State*, 496 S.W.2d 616 (Tex.Cr.App. 1973); *Ford v. State*, 484 S.W.2d 727 (Tex.Cr.App. 1972). A defendant's denial of the commission of the crime and his reliance on the defense of alibi makes identity a controverted issue. *Lee v. State, supra*; cf. *Redd v. State*, 522 S.W.2d 890 (Tex.Cr.App. 1975); *Franklin v. State*, 488 S.W.2d 826 (Tex.Cr.App. 1972). Since the appellant here denied that he committed the offense and offered an alibi defense, identity is a controverted issue. We must then determine whether there were distinguishing characteristics common to both the extraneous offense and the offense for which the appellant was on trial—in other words, would the evidence that also proved the robbery at the Ready-Mart Food Store aid in determining whether the appellant is the person who committed the offense at SIC?

"In *Ford v. State, supra*, it was said the common distinguishing characteristic may be the proximity in time and place of the extraneous offense to the offense for which the accused is being tried, or the common element may be the mode of commission of the criminal offenses. In *Ransom v. State, supra*, it was said that both proximity in time and place and the common mode of the commission of the offense were present. There the robberies were committed within three days time and a confederate acted with the defendant in both robberies.

"In this case although both robberies were committed in Lubbock, they were separated in time by eight months. The robbery of the grocery store was committed by two black men with a pistol. The robbery at SIC was committed by one black man with a pistol. (The State argues that a second person was the driver of the car in which the appellant escaped from the robbery at SIC.) We find no distinguishing characteristics common to both the extraneous offense and the offense for which the appellant is on trial. The admission of the evidence of the extraneous offense, the robbery at the Ready-Mart Food Store, cannot be characterized as harmless error; its admission in evidence was reversible error. *Ford v. State, supra*."

*McDonald v. State*, Tex.Cr.App., 513 S.W.2d 44, upheld a conviction for sodomy where the issues of identity, alibi, and guilty knowledge were raised by the evidence. After such fact issues were raised by defensive testimony, the State introduced testimony of several acts of sodomy committed by the defendant on others at various times prior to the offense for which he was on trial. One of these witnesses, Jesse ———, testified that on about ten occasions the defendant had committed acts of oral sodomy with him. In our opinion affirming the conviction we said:

"Neither are we impressed with appellant's contention that the act upon Jesse ——— was too remote. In *Robledo v. State*, 480 S.W.2d 401 (Tex.Cr.App. 1972),

we held that introduction of an extraneous offense which occurred four years and three months before the offense on trial was reversible error since the extraneous offense was too remote. Yet in the instant case, the extraneous offense and the offense on trial are separated by approximately one year. This fact *coupled with the other extraneous offenses occurring near the date of the primary offense, is sufficient to show a continuing course of conduct.* For these reasons, we are unable to hold that such testimony was too remote. The testimony showed and explained the unnatural attention and the unnatural conduct which appellant showed toward Clemente. Under these facts, it was relevant, admissible and not too remote." (Emphasis added.)

In the instant case, there was no proximity in time or place of the extraneous offense to the offense for which appellant was on trial. Two years nine months and the width of several states intervened between the commission of the two crimes. No other offenses "sufficient to show a continuing course of conduct" as in *McDonald,* supra, and in *Voelkel v. State,* Tex. Cr.App., 501 S.W.2d 313, were proved. The common characteristics evidently relied on by the State and the trial court were that in both instances a forcible rape was committed on an adult woman by a black boy using a knife, and on each occasion he had seen the victims earlier on the day he committed the rape, and in each instance the rapist stole money from the victim's purse before leaving. On the other hand, we note that one rape was committed in an apartment occupied by the rapist, and in the other it was in the victim's car. In the instant case the prosecutrix testified appellant assaulted her three times in the apartment and then tied her before preparing to leave. In the extraneous offense, the victim was raped once in her car and then, after taking her attacker to the place he had entered the car, she was permitted to proceed unhindered.

██ Under all the circumstances of this case, we conclude that remoteness of time

of this particular extraneous offense, with no evidence of other intervening similar offenses sufficient to show a continuing course of conduct, together with the other facts and circumstances, were such as to render the evidence of the rape in Florida two years and nine months prior to the instant offense, when appellant was less than 13 years old, to be inadmissible, and that prejudicial error resulted in its admission over the objection of appellant made when such evidence was offered before the jury. See *Cameron v. State, supra; Robledo v. State, supra; McDonald v. State, supra.*

The judgment is reversed and the cause is remanded.

Opinion approved by the Court.