Charles Patrick MESSENGER, Appellant,

v.

The STATE of Texas, Appellee.

No. 62134.

Court of Criminal Appeals of Texas,
Panel No. 2.

May 12, 1982.

On Rehearing Sept. 22, 1982.

---

Mike DeGeurin, Houston, for appellant.

Carol S. Vance, Dist. Atty. and Raymond E. Fuchs, and Russell Hardin and James C. Brough, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and McCORMICK, JJ.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction of aggravated sexual abuse. The jury found the appellant guilty and assessed punishment at confinement for twenty-five years.

The appellant does not challenge the sufficiency of the evidence. In two grounds of error, he contends that the trial court erred in admitting testimony about two extraneous offenses.

The instant offense occurred on May 14, 1978. The victim was a thirty-one year old woman. The victim testified that on the day in question she was alone in her house with her seven year old daughter. At about 2:30 a. m. the light came on in the bedroom where the victim and her daughter were sleeping. She saw a man standing in

the doorway. The man motioned with his hand for the victim to come to him. He held a baseball bat in his right hand. As the victim walked toward him, the man grabbed the victim's shirt and pulled her into the hall. He asked her whether any men were in the house; the victim told him there were not. The man then pulled the victim into the front bedroom of the house. When the victim's daughter began calling to her, the man told the daughter that something bad would happen to her mother if she did not stop yelling. The man then took the victim back into the front bedroom. Throughout this time, the man held the baseball bat. The man commanded the victim to kiss him, which she did, then engaged in anal intercourse with the victim. He then ordered the victim to commit oral sodomy upon him. During this act the victim was able to partially free herself long enough to tell her daughter to run out of the house and call a friend. The man then grabbed the victim by her hair and dragged her through the house looking for the daughter. When she saw that her daughter had escaped, the victim again tried to escape from him, and after a struggle was successful. The man fled into the night. The victim positively identified the appellant as the man who had victimized her.

The appellant's defense was alibi. His ex-wife testified that on the night in question, she and the appellant had gone to a club. They had returned to her apartment, and had spent the entire night together. She also testified that the appellant could not have been the man who had sexually abused the victim because he had an anatomical problem which made forced sex acts very painful for him.

In rebuttal, the State called witnesses to two extraneous assaults. L___ W___, a thirteen year old girl, testified that on May 24, 1978, ten days after the primary offense, the appellant had entered her house at about 9:30 p. m. He grabbed her by the hair after she did not respond to his command to come to him. When L___ W___

screamed, her mother came into the room. The appellant then asked the mother whether any men were in the house. She said that there were and began trying to push him out the front door. The appellant pushed her down and ran out the door.

T___ B___, a nine year old girl, testified that on June 2, 1978, during the early morning hours, the appellant entered her bedroom, picked her up, and took her out of her apartment. He took her to an open field across from the apartment complex. There he removed her clothes and began fondling her sexual organs. When the victim saw her mother arrive at her apartment, the appellant allowed the girl to put her night gown back on, and walked her part of the way back to her apartment. He then fled into the night.

The evidence showed that both of these extraneous assaults occurred within about a four block radius of the instant offense. The appellant's residence was within that same area. The evidence also showed the three assaults occurred within three weeks of each other.

The appellant contends that neither of the extraneous offenses was admissible. Although he concedes that in this case identity was in issue, he argues that the differences between the extraneous offenses were great and the similarities were few. He also argues that the similarities were neither distinguishing nor unusual.

The State argues that, in addition to the proximity of time and place, in each of the three assaults the appellant entered a house uninvited and when no men were present. Therefore, the State argues, the two extraneous offenses were admissible to prove the appellant's identity.

In *Collazo v. State*, 623 S.W.2d 647 (Tex. Cr.App.1981), we recently set forth the rules for admission of extraneous offenses admitted to show the identity of a defendant. We stated:

The question presented is whether the trial court erred in admitting evidence of

an extraneous offense. Such questions involve principles of law which were stated well in *Murphy v. State,* 587 S.W.2d 718, 721–722 (Tex.Cr.App.1979) (footnotes omitted) (emphases omitted):

"It is an established general rule of evidence that proof of similar happenings, extraneous transactions or prior specific acts of misconduct committed by a party is irrelevant to the contested material issues in the case on trial and therefore inadmissible.

"In a criminal proceeding, when the extraneous or similar transaction committed by the accused, sought to be admitted by the State, constitutes a criminal offense, introduction of that 'extraneous offense' transaction is inherently prejudicial because: (1) the accused is entitled to be tried on the accusation made in the State's charging instrument which specifies the 'material issues' of the case and cannot—consistent with the rudiments of due process—be tried for some collateral crime of which he has no notice, *Jones v. State,* 568 S.W.2d 847 (Tex.Cr.App. 1978); *Walls v. State,* 548 S.W.2d 38 (Tex.Cr.App.1977); *Young v. State,* 159 Tex.Cr.R. 164, 261 S.W.2d 836 (1953); *Couch v. State,* 155 Tex.Cr.R. 585, 238 S.W.2d 198 (1951); and (2) an accused's 'propensity to commit crimes' is not an issue which is material to whether he is guilty of the specific conduct charged by the State; it follows therefore, that introduction of evidence establishing such a propensity constitutes a trial of the accused as a 'criminal generally' which offends our system of justice. *Young, supra; Couch, supra; Clements v. State,* 147 Tex.Cr.R. 531, 182 S.W.2d 915 (1944); see *Spivey v. State,* 146 Tex.Cr.R. 11, 171 S.W.2d 140 (1943). See also *Jones, supra; Etchieson v. State,* 574 S.W.2d 753 (Tex.Cr.App. 1978); *Cameron v. State,* 530 S.W.2d 841 (Tex.Cr.App.1975); *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972).

"Extraneous transactions constituting offenses shown to have been committed by the accused may become admissible upon a showing by the prosecution both that the transaction is relevant to a [contested,] material issue in the case [and that] the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Ruiz v. State,* 579 S.W.2d 206 (Tex.Cr.App. 1979); *Jones, supra.*"

When identity has become a contested, material issue, as it did in this case, there must be a showing that the extraneous offense which was committed by the defendant was 'so nearly identical in method [to the instant offense] as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.' E. Cleary, *McCormick's Handbook of the Law of Evidence* 449 (2d ed. 1972). If there is no sufficiently distinctive characteristic, then the relevancy of the evidence cannot outweigh its prejudicial potential. See *Ford v. State,* 484 S.W.2d 727 (Tex.Cr.App.1972). Each case inevitably will turn on its unique facts. 623 S.W.2d at 647–648.

■ Based upon the facts in the record before us, we hold that the testimony about the extraneous offense committed upon T____ B____, the nine year old girl, was inadmissible. The instant offense involved an adult woman; the extraneous offense involved a child. The instant offense involved the threat of force by means of a weapon; the extraneous offense involved no weapon. The instant offense involved two acts of deviate sexual intercourse; the extraneous offense involved the fondling of the child's sexual organs. These are significant differences.

The similarities between these two offenses were that in each case an assailant entered the victim's house uninvited, when no man was present in the house. Also, each case involved an entry at night. Were

these similarities so distinctive that they can be said to be the appellant's "signature?" We hold that they were not. They show no more than an expected degree of caution on the part of the assailant. We cannot hold that these general similarities were so distinctive that the value to the jury in hearing the testimony about these two extraneous offenses outweighed the prejudicial effect which inevitably accompanies such evidence. The testimony should not have been admitted.

■ We view the admissibility of the other extraneous offense as a much closer case, and hold that testimony concerning it was properly admitted. Although the same differences are present as set forth above, the evidence also shows that the attack by the appellant was interrupted by the arrival of the victim's mother when the victim screamed. Although no sexual attack actually took place, we do not view that difference as dispositive. Furthermore, the similarities between this extraneous offense and the instant offense are much greater. In both of these cases, the assailant grabbed the victim by her hair and pulled her across the room. In both, the assailant asked whether a man was present in the house. These two similarities show something more than simple caution by an assailant. They come much closer to being something of a signature by the appellant. For that reason, the testimony concerning this extraneous offense was properly admitted on the issue of the identity of the person who committed the instant offense.

We write further to attempt to clarify a continuing misconception of the basis upon which extraneous offenses are admissible. The fact that the appellant's defense in this case was alibi would not alone authorize the admission of testimony about extraneous offenses to show the appellant's identity. In this case, neither of the extraneous offenses occurred on the night the instant offense occurred. Therefore, neither of the extraneous offenses tended to show that the appellant was not where he said he was on the night in question. They would not have been admissible to rebut his alibi.

Furthermore, since in neither of the extraneous offenses did an act of sexual penetration occur, neither tended to rebut the testimony of the appellant's ex-wife that the appellant could not have committed the instant offense because of an anatomical problem which made forced sexual activity painful for him.

Therefore, it was not the appellant's alibi which authorized the admission of the testimony concerning one of these extraneous offenses. Rather, it was that the identity of the person who committed the instant offense was in issue, and the extraneous offense showed enough distinguishing characteristics that the two offenses could be said to be the work of the same person.

For the error in admitting the testimony concerning the extraneous offense committed upon T____ B____, the judgment is reversed and the cause is remanded.

McCORMICK, J., dissents.

Before the Court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

On original submission appellant's conviction for aggravated sexual abuse, V.T.C.A., Penal Code Sec. 21.05, was reversed for the erroneous admission of evidence of an extraneous offense. We need not consider the correctness of that holding for reasons stated herein.

■ On rehearing we notice the jury charge is fundamentally defective and therefore requires reversal.

Section 21.05, supra, at the time of this offense provided:

"(a) A person commits an offense if he commits sexual abuse as defined in Section 21.04 of this code or sexual abuse of a child as defined in Section 21.10 of this code and he:

"(1) causes serious bodily injury or attempts to cause death to the victim or another in the course of the same criminal episode; or

"(2) compels submission to the sexual abuse by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone.

"(b) An offense under this section is a felony of the first degree."

The felony information in this case alleged that appellant did:

"with intent to arouse the sexual desire of the Defendant and by force and by threatening the imminent infliction of serious bodily injury and death to and without the consent of [M___ S___ G___], a person not his spouse and hereafter styled the Complainant, have deviate sexual intercourse with the Complainant by placing his penis in the mouth of the Complainant."

The aggravating factor alleged pursuant to Sec. 21.05(a)(2), supra, is the threat of "imminent infliction of serious bodily injury and death" to the complainant. The allegation of the use of force is not an allegation of an aggravating factor under Sec. 21.05. Yet when the jury was charged on the circumstances under which a guilty verdict would be authorized, the allegations of the use of force and of the threats alleged were submitted disjunctively:

"Now, therefore, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about May 14, 1978, the defendant did then and there unlawfully with the intent to arouse the sexual desire of him, the defendant, and by force or by threatening the imminent infliction of serious bodily injury or death to and without the consent of [M___ S___ G___], a person not his spouse, have deviate sexual intercourse with [M___ S___ G___] by placing his, the defendant's penis in the mouth of [M___ S___ G___], you will find the defendant guilty as charged."

The charge, therefore, authorized the jury to convict appellant of aggravated sex-

ual abuse without finding the alleged acts of aggravation. This had the same effect as an omission of that element from the charge, which constitutes fundamental error. *Cumbie v. State,* Tex.Cr.App., 578 S.W.2d 732; see Odom & Valdez, A Review of Fundamental Error in Jury Charges in Texas Criminal Cases, 33 Baylor L.R. 749.

The motion for rehearing is denied.

ROBERTS and TEAGUE, JJ., concur in the results.

McCORMICK, J., dissents.