Robert George LANG, Appellant,

v.

The STATE of Texas, Appellee.

No. 08-84-00166-CR.

Court of Appeals of Texas,
El Paso.

Oct. 9, 1985.

Robert E. Valdez, Kemp, Smith, Duncan & Hammond, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

OPINION

WARD, Justice.

This is an appeal from a conviction for aggravated sexual assault. The court as-

sessed punishment at twenty-five years imprisonment. We affirm.

On January 20, 1984, at approximately 10:15 p.m., the complainant left the west El Paso apartment where she was staying to see if she had locked her car for the night. In the parking lot, she was grabbed from behind and dragged to the rear of her vehicle. The assailant removed her robe and ripped her nightgown down the front. He struck her in the face several times with his fist, scratched her face, breast and arm, and threatened to strike her head with a large rock. He pulled her underwear down but not off. He then engaged in vaginal and oral intercourse. Throughout these acts, he engaged in "filthy talk." Finally, the complainant was able to kick him in the genitals and escaped to her apartment where she called the police. Two days later, the complainant received a threatening telephone call. She identified the voice as that of the assailant. The speaker referred to the earlier sexual assault. She reported the call to the police. Appellant was arrested on January 23. In court, the complainant positively identified the Appellant as her assailant.

The Appellant offered evidence of an employment alibi. On rebuttal, over objection, the State offered proof of an extraneous sexual assault by the Appellant. The extraneous offense complainant testified that she was working alone as a convenience store clerk in northeast El Paso at 2:00 a.m., October 18, 1980. The Appellant entered, purchased a soft drink and engaged her in conversation. He began to yell at her, followed her into a storage room and grabbed her. He held a knife to her throat and told her, "[s]weetheart, I am going to kill you . . . ." He pulled her pants and underwear down to her ankles and sexually assaulted her from behind. He engaged in vaginal and anal intercourse, all the while using vulgar, sexual language. In mid-December, 1983, one month before the present indicted offense, this complainant also received a telephone call from the assailant. In court, she positively identified the Appellant as her attacker and as the caller.

At trial and on appeal, Appellant has relied primarily upon *Collazo v. State,* 623 S.W.2d 647 (Tex.Crim.App.1981), contending that the extraneous and indicted offenses are not sufficiently similar so as to establish the requisite signature-like relationship. Of particular significance is the thirty-nine month time span between the two. The trial court, in overruling the defense objection, placed express reliance upon *Dickey v. State,* 646 S.W.2d 232 (Tex. Crim.App.1983). The common elements in *Dickey* and the time span involved there were more supportive of admissibility than the factors in this case. Nonetheless, the opinion in *Dickey* stated that the similarity requirements should not be a rigid rule and:

> Proximity in time and place may be a factor, but it must be considered along with the other facts and circumstances.

*Dickey, supra* at 236 (Onion, P.J., concurring).

We will not repeat the similarities and dissimilarities in this case. They are readily apparent from the factual summary above. The only additional comment on the factors which is appropriate concerns the nature of the various sexual acts involved. Appellant naturally characterizes them as dissimilar, the State as similar. Such a mechanical process of initial arbitrary classification and subsequent weighing of the elements is unrealistic. There is some similarity in that both times the assailant first engaged in vaginal intercourse, followed by a deviate sexual act. It is more productive to simply recognize and weigh the connection for what it is and avoid an all-or-nothing analysis. It is neither absolute similarity nor absolute dissimilarity.

▮ As Judge Teague pointed out in his dissent in *Dickey,* the frequent dissection of extraneous and indicted offenses into laundry list comparisons obscures the fact that often the listed items are generic to the type of offense involved and "would probably fit the facts of any number of cases . . . ." *Dickey, supra* at 240. The only answer to Judge Teague's concern is

to require that in the case of near-generic components there be a greater number of similarities with a greater degree of consistency between the two offenses. Yet each case must be measured on its own merits. The often repeated standard refers to the necessary connective similarity in the singular, not the plural:

> This relationship should consist of *some distinguishing characteristic* common to both the extraneous offense and the offense charged. [emphasis added]

*Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex. Crim.App.1985), *rev'g.*, 669 S.W.2d 394 (Tex.App.—El Paso, 1984). Thus, one highly distinct common feature may suffice. If there is a single sufficiently distinguishing common characteristic, even a number of dissimilarities will not destroy the relevance or admissibility of the extraneous offense. *Collins v. State*, 577 S.W.2d 236, 238 (Tex.Crim.App.1979).

Turning our attention to the specific question of proximity in time, we note the following time spans and results in prior opinions: *Siqueiros, supra* (twenty-six days; upheld); *Dickey, supra* (five days; upheld); *Messenger v. State*, 638 S.W.2d 883 (Tex.Crim.App.1982) (one month; overturned); *Bachhofer v. State*, 633 S.W.2d 869 (Tex.Crim.App.1982) (fifty-two months; overturned); *Collazo, supra* (one year; overturned); *Wintters v. State*, 616 S.W.2d 197 (Tex.Crim.App.1981) (two months; upheld); *Collins, supra* (twelve days; upheld); *James v. State*, 554 S.W.2d 680 (Tex. Crim.App.1977) (thirty-three months; overturned); *McDonald v. State*, 513 S.W.2d 44 (Tex.Crim.App.1974) (one year; upheld); *Robledo v. State*, 480 S.W.2d 401 (Tex. Crim.App.1972) (fifty-one months; overturned). Of course the results in those cases did not turn solely upon the time factor. It is immediately apparent, however, that in evaluating that factor alone the present thirty-nine-month gap is consistent with the range of cases generally resulting in reversal. A closer scrutiny of the temporal proximity evaluation made in those cases, however, reveals a corollary rule. In each case of reversal primarily upon remoteness, the uniform evaluation made by the Court of Criminal Appeals was that there was a great time lapse with no intervening relevant misconduct to narrow the gap. *Bachhofer, supra; James, supra; Robledo, supra.* In *McDonald,* the one-year gap was closed by a continuing course of conduct relevant to the indicted offense and the more remote extraneous. This principle is a reasonable parallel to the rule with regard to admissibility of remote prior convictions for impeachment purposes.

Using the above considerations and analytic framework, we have concluded that there was no error in the introduction of the extraneous offense in this case. The most significant distinguishing feature common to both cases was the subsequent telephoning of the victim. As previously noted, both women positively identified Appellant as the assailant and the caller. In looking for signature-like similarities, the range is not limited to time, place and the minimum legal elements of the offense, but includes the overall modus operandi of the perpetrator. Thus, even though the call to the extraneous victim occurred some thirty-eight months after the offense, it is a component part of that incident. Neither victim was robbed of her wallet or other source of identification. There is no evidence of how the perpetrator focused on these particular victims. The first victim was attacked at work, not at home, and had in any event moved to a new residence subsequent to the attack. Consequently, these telephone calls to the victims evidence a peculiar diligence in locating their names and telephone numbers and a peculiar persistence of interest in them which rises to the level of signature status. In addition to providing the signature element prerequisite to admissibility, the telephone calls also provide an answer to the remoteness problem. While from a legal standpoint the extraneous offense was complete in October, 1980, this particular modus operandi was alive and operative through the subsequent telephone call in December, 1983. Thus, the elements of the two offenses were separated by thirty-nine

months, but the critical signature factors were only one month apart. The call to the first extraneous victim in mid-December, 1983, is also indicative of the Appellant's state of mind shortly before commission of the indicted offense on January 20, 1984. In summary, we find that the necessary common distinguishing feature in these two criminal incidents was present and the relevance of the extraneous offense to the identity issue was established. Ground of Error No. One is overruled.

The judgment of the trial court is affirmed.

STEPHEN F. PRESLAR, Chief Justice, dissenting.

I respectfully dissent on the basis that there were not sufficient distinguishing characteristics common to both the primary offense and the extraneous offense to authorize the admission of the extraneous offense under the principles of law enunciated in *Collazo v. State*, 623 S.W.2d 647 (Tex.Crim.App.1981) and *Murphy v. State*, 587 S.W.2d 718 (Tex.Crim.App.1979). In *Dickey v. State*, relied on by the majority, there were a number of similarities between the primary offense and the extraneous offense. In the case before us the only truly distinguishing characteristic is the telephone calls and they are not truly similar because in one instance a victim was called thirty-eight months after the incident and in the other it was two days after the incident. Except for the telephone calls, the primary offense of sexual abuse and the extraneous offense of rape are similar to any other sexual abuse or rape case and lack distinguishing characteristics. The general rule that the accused can be convicted, if at all, only by evidence that shows he is guilty of the offense charged, should not be ignored because of the one distinguishing characteristic of the telephone calls.

I would sustain the ground of error and reverse the conviction and remand for a new trial.