Bobby Gene Wyatt v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-128-CR

BOBBY GENE WYATT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 89TH 
DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

One evening, a group of people gathered outside Appellant Bobby Gene Wyatt’s house.  They were drinking.  Late in the evening, Appellant got into an argument with one of his guests and asked him to leave.  The guest refused.  Appellant hit him a few times with his .22 rifle and then shot him in the face. The guest died at the scene from hemorrhagic shock and aspiration, and the State charged Appellant with his murder.  A jury rejected Appellant’s claim of self-defense, convicted him of murder, and assessed his punishment at life imprisonment and a $10,000 fine.  The trial court sentenced him accordingly.   In three points, Appellant contends that the trial court erred by denying his motion for an instructed verdict, by instructing the jury on the law of concurrent causes, and by admitting during the guilt-innocence phase evidence of Appellant’s acquittal in a prior case.  Because we hold that the trial court did not reversibly err and that the evidence is legally sufficient, we affirm the trial court’s judgment.

In his first point, Appellant complains that the trial court erred by overruling his motion for instructed verdict.  Such a complaint is a challenge to the legal sufficiency of the evidence.
(footnote: 2)  Appellant contends that the indictment charged him with intentionally or knowingly causing the complainant’s death by shooting him in the head but that the evidence shows that the cause of death was a combination of a gunshot wound and a blunt force injury.  Appellant therefore concludes that a fatal variance exists between the indictment and the evidence.  We hold that there is no variance in this case, material or otherwise, because the evidence supports the indictment.
(footnote: 3)
 As the State points out, section 6.04(a) of the Texas Penal Code provides, “A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.”
(footnote: 4)  The Texas Court of Criminal Appeals has consistently held that “[i]f the act of the defendant alleged in the indictment contributed to the death of the deceased he is responsible though there were other concurring causes.”
(footnote: 5)  The Texas Court of Criminal Appeals has upheld convictions under this theory when the other cause was another party’s actions
(footnote: 6) as well as when the other cause consisted of other conduct by the defendant.
(footnote: 7)
 The evidence in the case before us sufficiently shows that the gunshot wound was fatal in and of itself.  Although the autopsy report provided and the medical examiner, Dr. Peerwani, confirmed that the cause of death was the gunshot injury and blunt force trauma to the face, Dr. Peerwani also testified,

A. The most significant injury or cause was the gunshot wounds.  He had a . . . single-entry gunshot wound just below his right nostril, so it was an entry gunshot wound.  And from this point of entry, I was able to . . . track that — which made an exit through the back side of his head just behind his right ear, and that was the exit gunshot wound.  This was, in fact, a fatal gunshot wound.  The bullet passed through a major artery on the right side of his face, the right facial artery, and there was a lot of blood that he had swallowed, he had aspirated blood, which together produces death.

Q. And based on what you just said . . . the gunshot wound was the actual cause of death?

A. Yes, ma’am.

. . . . 

A. . . . The gunshot injury in and by itself would have definitely produced a death, unless there was surgical intervention.  Blunt force trauma would not necessarily have produced death.  So I would say that the most significant of the two injuries is the gunshot wound.

. . . .

A. . . . [W]hat I’m basically saying is that the mechanism of death in this case is a combination of hemorrhagic shock and aspiration.

Obviously, if he had not been assaulted and just been shot, he would have still died.  If he had only been assaulted and he aspirated, he would not necessarily have died.  . . .  [H]owever, since he did aspirate, I was obligated to put that also under the cause of death.

Because we hold, based on the applicable standard of review,
(footnote: 8) that the evidence is legally sufficient to support Appellant’s conviction based on the indictment, we overrule Appellant’s first point.

In his second point, Appellant contends that the trial court erred by giving an instruction on concurrent causation.  Specifically, he claims that the instruction was not warranted by the evidence and that it was a comment on the weight of the evidence.  We disagree.  As the State points out, the abstract instruction given by the trial court was merely a statement of the law as provided in section 6.04(a).  Because of the nature of this case and the evidence detailed above, the instruction on concurrent causation was part of the law applicable to the case.
(footnote: 9)  Because the instruction was part of the law applicable to the case, it was not a comment on the weight of the evidence.
(footnote: 10)  We overrule Appellant’s second point.

In his third point, Appellant contends that the trial court erred by admitting during the guilt-innocence phase evidence of Appellant’s acquittal of attempted murder in 1977.  In the 1977 case, concerning an alleged offense that also occurred at Appellant’s home, Appellant successfully raised self-defense, the same defense raised in the case before us.  The State told the trial court that it wanted to use the 1977 case to rebut Appellant’s theory of self-defense under the doctrine of chances.
(footnote: 11)  The trial court ultimately admitted the evidence to rebut Appellant’s defense and to show his state of mind.

Appellant complains on appeal that the evidence is inadmissible because it is too remote and because evidence of acquittals cannot be admitted as extraneous offenses.  While we agree that evidence of an acquittal should not be admitted as an extraneous offense,
(footnote: 12) Appellant did not raise this complaint below.  He has therefore failed to preserve it.
(footnote: 13)
 Appellant did preserve his remoteness complaint, however.  While his argument on the remoteness issue is short, we reject the State’s contention that his briefing is so inadequate that he has forfeited this complaint.  We shall therefore address it.

Both the State and Appellant correctly point out that there is no per se rule regarding remoteness and admissibility.
(footnote: 14)  This court has pointed out, however, in holding that a trial court abused its discretion by admitting an extraneous offense that had occurred twelve years before the charged offense, that

[a]s a general rule, the greater the time period between the charged and extraneous offenses, the greater the likelihood of error in admitting the evidence of the extraneous offense.  
Reys 
[
v. State
, 69 S.W.3d 725, 740 (Tex. App.—Corpus Christi 2002).]  The court of criminal appeals has reversed cases where the extraneous offense is too remote in proximity to the instant offense.  
See
,
 e.g.
,  
Messenger v. State
, 638 S.W.2d 883, 885 (Tex. Crim. App. [Panel Op.] 1982) (reversing conviction where nineteen days elapsed between extraneous and instant offenses), 
overruled on other grounds by Almanza v. State
, 686 S.W.2d 157, 157 (Tex. Crim. App. 1984); 
Bachhofer v. State
, 633 S.W.2d 869, 872 (Tex. Crim. App. 1982) (reversing where fifty-two months elapsed between extraneous and instant offenses); 
Collazo v. State
, 623 S.W.2d 647, 648 (Tex. Crim. App. 1981) (reversing where one year elapsed between extraneous and instant offenses); 
James v. State
, 554 S.W.2d 680, 683 (Tex. Crim. App. 1977) (reversing where thirty-three months elapsed between extraneous and instant offenses); 
Ford 
[
v. State
, 484 S.W.2d 727, 731 (Tex. Crim. App. 1972)] (reversing where two months elapsed between extraneous and instant offenses); 
Robledo v. State
, 480 S.W.2d 401, 402 (Tex. Crim. App. 1972) (reversing where fifty-one months elapsed between extraneous and instant offenses).

These cases appear to hold similarly because, in addition to time being a significant factor, there was no intervening misconduct by the defendants in each case that might narrow the gap.  
See Lang v. State
, 698 S.W.2d 735, 737 (Tex. App.—El Paso 1985, no pet.).  
In Lang
, the El Paso Court of Appeals did not reverse the defendant’s conviction despite a thirty-nine-month time lapse because his “particular modus operandi was alive and operative through the intervening period,” as evidenced by his conduct.  
Id.
(footnote: 15)

In the case before us, the State’s examination of Appellant showed the following:

Q. [Appellant,] you were claiming that in this case the victim was the only aggressor, that Stephen Fisher was the only one being aggressive between the two of y’all?

A. Yes.

Q. [Appellant], you have previously had incidents where you assaulted people and claimed self-defense, haven’t you?

A. No, I haven’t.  I have been charged with that, but it come to self-defense.

Q. Okay.  Have you had a situation where there was — where you assaulted someone and asserted self-defense?

A. Yes, I have.

Q. Okay.  In that case, did you shoot an individual?

A. Yes, I shot an individual.

Q. And then you, then, claimed self-defense?

A. Yes.

Q. And you were actually acquitted in that case?

A. Yes.  He come to my house.

Q. And that was somebody else at your house and you asserted self-defense?

A. He come to my house to shoot me with a .25 automatic and I got the ups on him.

Q. Okay.

A. That’s why I was acquitted with self-defense.

Q. That’s fine.  But you have . . . used that defense before?

A. No, I haven’t.

Q. You haven’t ever used self-defense before?  I thought that’s what we were just discussing?

A. Yes, I have used self-defense, uh-huh.

Q. And you have assaulted people at your house before, haven’t you?

A. Yes, I have.

Q. Okay.  You — back in 2000, you used a hatchet to assault somebody at your house, didn’t you?

A. Yes, I did.

Q. You’ve also assaulted females in the past, haven’t you?

A. Yes, I have.

The defense’s examination of Appellant explained that the incident in which Appellant raised self-defense occurred in 1977 and that the other assaults, the admission of which Appellant does not challenge on appeal, occurred later and were misdemeanors.

In 
Lang
, the conduct through the intervening period was contextually related to the extraneous offense.
(footnote: 16)  In the case before us, while other offenses occurred during the almost thirty-year gap, we are not satisfied that they bridged the gap between the charged offense and the offense of which Appellant was acquitted because of the gap’s extraordinary length and the nature of the offense that is the subject of this appeal.  We consequently hold that the trial court erred by admitting evidence of the 1977 case.

But we also hold that the error was harmless.  First, the evidence does not support Appellant’s claim of self-defense.  Appellant’s testimony showed the following scenario.  When the complainant would not leave Appellant’s yard, Appellant hit him, and when Appellant hit him, the complainant “made a move towards” Appellant.  Appellant then hit him twice, but the complainant kept coming towards Appellant.  Appellant hit the complainant three times at most.  Appellant said that he did not have any choice other than to shoot the complainant.  Appellant believed that if the complainant had reached him, then the complainant probably would have hurt him.  Appellant feared for his life.  Specifically, Appellant was afraid that the complainant had a weapon that night because the complainant had his backpack with him, and Appellant did not know what he had in it.  About ten years earlier, the complainant had pulled a pistol on Appellant.  But they got along after that, he no longer considered the complainant a threat, and the complainant had been to Appellant’s home since that altercation.

Significantly, Appellant admitted on cross-examination that he was within steps of the safety of his home when he chose to shoot the complainant, who was six or seven feet away and already injured from the blows from the gun.  Appellant also testified that when he shot the complainant, the complainant had not hit him or pulled any weapons, nor had the complainant done anything to make him believe that he was going to steal property or go into Appellant’s house.  Appellant was not injured in any way that night.

The police did not recover any weapon on the complainant.  They found a nail clipper or similar item inside a sealed bag in the backpack.

Appellant’s testimony revealed that, in addition to the rifle, he had three knives in his pocket and a BB gun and a bat in the house.  Additionally, there was evidence that Appellant weighed about 170 pounds and was five feet, eleven inches tall; and, although Appellant disputed it, evidence that the complainant was 115 pounds and five feet, nine inches tall.

A person is not justified in using deadly force to defend himself if a reasonable person in the actor's situation would have retreated.
(footnote: 17)  A reasonable person, who was taller and heavier than his opponent, who had already hit his opponent three times without receiving any injuries in return, who had removed himself from the immediate vicinity of the opponent so that six or seven feet of ground separated them, and who was anywhere from six to twenty steps, depending on his various testimony, from the inside of his home, would have retreated.

Additionally, the evidence of the 1977 incident is cumulative of the more provocative evidence, about which Appellant does not complain, that Appellant had attacked a person at his home with a hatchet just two years before the charged offense occurred.  Finally, the prosecutor did not otherwise refer to the 1977 incident during the examination of witnesses, nor did she refer to it in her closing argument.

Based on the applicable test for nonconstitutional harm,
(footnote: 18) we therefore conclude that the trial court’s error in admitting evidence of the 1977 case was harmless.  We overrule Appellant’s third point.

Having overruled Appellant’s three points, we affirm the trial court’s judgment. 

PER CURIAM

PANEL F: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 23, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).

3:
See
 
Rojas v. State
, 
986 S.W.2d 241, 246 (Tex. Crim. App. 1998)
.

4:
Tex. Penal Code Ann.
 § 6.04(a) (Vernon 2003); 
see also 
Thompson v. State
, 
93 S.W.3d 16, 20-21 (Tex. Crim. App. 2001), 
cert. denied
, 540 U.S. 899 (2003).

5:
Wright v. State
, 
388 S.W.2d 703, 706 (Tex. Crim. App. 1965).

6:
See
,
 e.g.
,
 id.
; 
see also Thompson
, 93 S.W.3d at 20-21.

7:
Rojas
, 
986 S.W.2d at 246.

8:
See
 
Jackson v. Virginia
,
 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); 
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

9:
See
 
Tex. Code Crim. Proc. Ann.
 art. 36.14 (Vernon Supp. 2005) (providing that the trial court shall charge the jury on “the law applicable to the case”).

10:
See Morin v. State
, 682 S.W.2d 265, 268-69 (Tex. Crim. App. 1983); 
see also Otto v. State
, 173 S.W.3d 70, 71 (Tex. Crim. App. 2005) (Cochran, J., concurring) (calling identical instruction “a plain-vanilla statutory instruction on concurrent causation”).

11:
See Martin v. State
, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

12:
See Stuart v. State
, 561 S.W.2d 181, 182 (Tex. Crim. App. 1978) (holding that admission of evidence that defendant had been acquitted previously of rape of a different complainant when he raised defense of consent was reversible error in new case charging aggravated rape in which defendant also raised defense of consent).

13:
See
 
Tex. R. App. P.
 33.1(a); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004);
 Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999).

14:
See Templin v. State
, 711 S.W.2d 30, 33 (Tex. Crim. App. 1986).

15:
Curtis v. State
, 89 S.W.3d 163, 173-74 (Tex. App.—Fort Worth 2002,  pet. ref’d).

16:
See Lang
, 698 S.W.2d at 737.

17:
See
 
Tex. Penal Code Ann.
 § 9.32(a)(2) (Vernon 2003).

18:
See 
Tex. R. App. P.
 44.2(b);
 King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).