COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

                                        NO. 2-05-128-CR

 

 

BOBBY GENE WYATT                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 89TH DISTRICT
COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








One
evening, a group of people gathered outside Appellant Bobby Gene Wyatt=s house.  They were
drinking.  Late in the evening,
Appellant got into an argument with one of his guests and asked him to
leave.  The guest refused.  Appellant hit him a few times with his .22
rifle and then shot him in the face. The guest died at the scene from
hemorrhagic shock and aspiration, and the State charged Appellant with his
murder.  A jury rejected Appellant=s claim of self-defense, convicted him of murder, and
assessed his punishment at life imprisonment and a $10,000 fine.  The trial court sentenced him
accordingly.  In three points, Appellant contends that the trial court erred by
denying his motion for an instructed verdict, by instructing the jury on the
law of concurrent causes, and by admitting during the guilt-innocence phase
evidence of Appellant=s acquittal in a prior case.  Because we hold that the trial court did not
reversibly err and that the evidence is legally sufficient, we affirm the trial
court=s judgment.

In
his first point, Appellant complains that the trial court erred by overruling
his motion for instructed verdict.  Such
a complaint is a challenge to the legal sufficiency of the evidence.[2]  Appellant contends that the indictment
charged him with intentionally or knowingly causing the complainant=s death by shooting him in the head but that the evidence
shows that the cause of death was a combination of a gunshot wound and a blunt
force injury.  Appellant therefore
concludes that a fatal variance exists between the indictment and the
evidence.  We hold that there is no
variance in this case, material or otherwise, because the evidence supports the
indictment.[3]








As
the State points out, section 6.04(a) of the Texas Penal Code provides, AA person is criminally responsible if the result would not
have occurred but for his conduct, operating either alone or concurrently with
another cause, unless the concurrent cause was clearly sufficient to produce
the result and the conduct of the actor clearly insufficient.@[4] 
The Texas Court of Criminal Appeals has consistently held that A[i]f the act of the defendant alleged in the indictment
contributed to the death of the deceased he is responsible though there were
other concurring causes.@[5] 
The Texas Court of Criminal Appeals has upheld convictions under this
theory when the other cause was another party=s actions[6]
as well as when the other cause consisted of other conduct by the defendant.[7]

The
evidence in the case before us sufficiently shows that the gunshot wound was
fatal in and of itself.  Although the
autopsy report provided and the medical examiner, Dr. Peerwani, confirmed that
the cause of death was the gunshot injury and blunt force trauma to the face,
Dr. Peerwani also testified,








A.     The
most significant injury or cause was the gunshot wounds.  He had a . . . single-entry gunshot wound
just below his right nostril, so it was an entry gunshot wound.  And from this point of entry, I was able to
. . . track that C which made an exit through the
back side of his head just behind his right ear, and that was the exit gunshot
wound.  This was, in fact, a fatal
gunshot wound.  The bullet passed
through a major artery on the right side of his face, the right facial artery,
and there was a lot of blood that he had swallowed, he had aspirated blood,
which together produces death.

 

Q.     And
based on what you just said . . . the gunshot wound was the actual cause of
death?

 

A.     Yes,
ma=am.

 

. . . . 

 

A.     
. . . The gunshot injury in and by itself would have definitely produced a
death, unless there was surgical intervention. 
Blunt force trauma would not necessarily have produced death.  So I would say that the most significant of
the two injuries is the gunshot wound.

 

. . . .

 

A.     .
. . [W]hat I=m basically saying is that the
mechanism of death in this case is a combination of hemorrhagic shock and
aspiration.

 

Obviously,
if he had not been assaulted and just been shot, he would have still died.  If he had only been assaulted and he
aspirated, he would not necessarily have died. 
. . .  [H]owever, since he did
aspirate, I was obligated to put that also under the cause of death.

 








Because we
hold, based on the applicable standard of review,[8]
that the evidence is legally sufficient to support Appellant=s conviction based on the indictment, we overrule
Appellant=s first point.

In
his second point, Appellant contends that the trial court erred by giving an
instruction on concurrent causation. 
Specifically, he claims that the instruction was not warranted by the
evidence and that it was a comment on the weight of the evidence.  We disagree.  As the State points out, the abstract instruction given by the
trial court was merely a statement of the law as provided in section
6.04(a).  Because of the nature of this
case and the evidence detailed above, the instruction on concurrent causation
was part of the law applicable to the case.[9]  Because the instruction was part of the law
applicable to the case, it was not a comment on the weight of the evidence.[10]  We overrule Appellant=s second point.








In
his third point, Appellant contends that the trial court erred by admitting
during the guilt-innocence phase evidence of Appellant=s acquittal of attempted murder in 1977.  In the 1977 case, concerning an alleged
offense that also occurred at Appellant=s home, Appellant successfully
raised self-defense, the same defense raised in the case before us.  The State told the trial court that it
wanted to use the 1977 case to rebut Appellant=s theory of self-defense under the
doctrine of chances.[11]  The trial court ultimately admitted the
evidence to rebut Appellant=s defense and to show his state of
mind.

Appellant
complains on appeal that the evidence is inadmissible because it is too remote
and because evidence of acquittals cannot be admitted as extraneous
offenses.  While we agree that evidence
of an acquittal should not be admitted as an extraneous offense,[12]
Appellant did not raise this complaint below. 
He has therefore failed to preserve it.[13]








Appellant
did preserve his remoteness complaint, however.  While his argument on the remoteness issue is short, we reject
the State=s contention that his briefing is
so inadequate that he has forfeited this complaint.  We shall therefore address it.

Both
the State and Appellant correctly point out that there is no per se rule
regarding remoteness and admissibility.[14]  This court has pointed out, however, in
holding that a trial court abused its discretion by admitting an extraneous
offense that had occurred twelve years before the charged offense, that








[a]s a general rule, the greater
the time period between the charged and extraneous offenses, the greater the
likelihood of error in admitting the evidence of the extraneous offense.  Reys [v. State, 69 S.W.3d 725,
740 (Tex. App.CCorpus Christi 2002).]  The court of criminal appeals has reversed
cases where the extraneous offense is too remote in proximity to the instant
offense.  See, e.g.,  Messenger v. State, 638 S.W.2d 883,
885 (Tex. Crim. App. [Panel Op.] 1982) (reversing conviction where nineteen days
elapsed between extraneous and instant offenses), overruled on other grounds
by Almanza v. State, 686 S.W.2d 157, 157 (Tex. Crim. App. 1984); Bachhofer
v. State, 633 S.W.2d 869, 872 (Tex. Crim. App. 1982) (reversing where fifty‑two
months elapsed between extraneous and instant offenses); Collazo v. State,
623 S.W.2d 647, 648 (Tex. Crim. App. 1981) (reversing where one year elapsed
between extraneous and instant offenses); James v. State, 554 S.W.2d
680, 683 (Tex. Crim. App. 1977) (reversing where thirty‑three months
elapsed between extraneous and instant offenses); Ford [v. State,
484 S.W.2d 727, 731 (Tex. Crim. App. 1972)] (reversing where two months elapsed
between extraneous and instant offenses); Robledo v. State, 480 S.W.2d
401, 402 (Tex. Crim. App. 1972) (reversing where fifty‑one months elapsed
between extraneous and instant offenses).

 

These
cases appear to hold similarly because, in addition to time being a significant
factor, there was no intervening misconduct by the defendants in each case that
might narrow the gap.  See Lang v.
State, 698 S.W.2d 735, 737 (Tex. App.CEl Paso 1985, no pet.).  In Lang, the El Paso Court of Appeals
did not reverse the defendant=s conviction despite a thirty‑nine‑month
time lapse because his Aparticular modus operandi was
alive and operative through the intervening period,@ as evidenced by his conduct.  Id.[15]

 

In
the case before us, the State=s examination of Appellant showed
the following:

Q.     [Appellant,]
you were claiming that in this case the victim was the only aggressor, that
Stephen Fisher was the only one being aggressive between the two of y=all?

 

A.     Yes.

 

Q.     [Appellant],
you have previously had incidents where you assaulted people and claimed
self-defense, haven=t you?

 

A.     No,
I haven=t.  I have been charged with that, but it come to self-defense.

 

Q.     Okay.  Have you had a situation where there was C where you assaulted someone and asserted self-defense?

 

A.     Yes, I have.








Q.     Okay.  In that case, did you shoot an individual?

 

A.     Yes,
I shot an individual.

 

Q.     And
then you, then, claimed self-defense?

 

A.     Yes.

 

Q.     And
you were actually acquitted in that case?

 

A.     Yes.  He come to my house.

 

Q.     And
that was somebody else at your house and you asserted self-defense?

 

A.     He
come to my house to shoot me with a .25 automatic and I got the ups on him.

 

Q.     Okay.

 

A.     That=s why I was acquitted with self-defense.

 

Q.     That=s fine.  But you
have . . . used that defense before?

 

A.     No,
I haven=t.

 

Q.     You
haven=t ever used self-defense
before?  I thought that=s what we were just discussing?

 

A.     Yes,
I have used self-defense, uh-huh.

 

Q.     And
you have assaulted people at your house before, haven=t you?

 

A.     Yes,
I have.

 

Q.     Okay.  You C back in 2000, you used a hatchet
to assault somebody at your house, didn=t you?

 








A.     Yes,
I did.

 

Q.     You=ve also assaulted females in the past, haven=t you?

 

A.     Yes,
I have.

 

The defense=s examination of Appellant explained that the incident in
which Appellant raised self-defense occurred in 1977 and that the other
assaults, the admission of which Appellant does not challenge on appeal,
occurred later and were misdemeanors.

In
Lang, the conduct through the intervening period was contextually
related to the extraneous offense.[16]  In the case before us, while other offenses
occurred during the almost thirty-year gap, we are not satisfied that they
bridged the gap between the charged offense and the offense of which Appellant
was acquitted because of the gap=s extraordinary length and the
nature of the offense that is the subject of this appeal.  We consequently hold that the trial court
erred by admitting evidence of the 1977 case.








But
we also hold that the error was harmless. 
First, the evidence does not support Appellant=s claim of self-defense. 
Appellant=s testimony showed the following
scenario.  When the complainant would
not leave Appellant=s yard, Appellant hit him, and
when Appellant hit him, the complainant Amade a move towards@ Appellant. 
Appellant then hit him twice, but the complainant kept coming towards
Appellant.  Appellant hit the
complainant three times at most. 
Appellant said that he did not have any choice other than to shoot the
complainant.  Appellant believed that if
the complainant had reached him, then the complainant probably would have hurt
him.  Appellant feared for his
life.  Specifically, Appellant was
afraid that the complainant had a weapon that night because the complainant had
his backpack with him, and Appellant did not know what he had in it.  About ten years earlier, the complainant had
pulled a pistol on Appellant.  But they
got along after that, he no longer considered the complainant a threat, and the
complainant had been to Appellant=s home since that altercation.

Significantly,
Appellant admitted on cross-examination that he was within steps of the safety
of his home when he chose to shoot the complainant, who was six or seven feet
away and already injured from the blows from the gun.  Appellant also testified that when he shot the complainant, the complainant
had not hit him or pulled any weapons, nor had the complainant done anything to
make him believe that he was going to steal property or go into Appellant=s house.  Appellant
was not injured in any way that night.

The
police did not recover any weapon on the complainant.  They found a nail clipper or similar item inside a sealed bag in
the backpack.








Appellant=s testimony revealed that, in addition to the rifle, he
had three knives in his pocket and a BB gun and a bat in the house.  Additionally, there was evidence that
Appellant weighed about 170 pounds and was five feet, eleven inches tall; and,
although Appellant disputed it, evidence that the complainant was 115 pounds
and five feet, nine inches tall.

A
person is not justified in using deadly force to defend himself if a reasonable
person in the actor's situation would have retreated.[17]  A reasonable person, who was taller and
heavier than his opponent, who had already hit his opponent three times without
receiving any injuries in return, who had removed himself from the immediate
vicinity of the opponent so that six or seven feet of ground separated them,
and who was anywhere from six to twenty steps, depending on his various
testimony, from the inside of his home, would have retreated.








Additionally,
the evidence of the 1977 incident is cumulative of the more provocative
evidence, about which Appellant does not complain, that Appellant had attacked
a person at his home with a hatchet just two years before the charged offense
occurred.  Finally, the prosecutor did not
otherwise refer to the 1977 incident during the examination of witnesses, nor
did she refer to it in her closing argument.

Based
on the applicable test for nonconstitutional harm,[18]
we therefore conclude that the trial court=s error in admitting evidence of
the 1977 case was harmless.  We overrule
Appellant=s third point.

Having
overruled Appellant=s three points, we affirm the
trial court=s judgment. 

 

PER CURIAM

PANEL F:    DAUPHINOT, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R.
App. P. 47.2(b)

 

DELIVERED:  March 23, 2006











[1]See Tex.
R. App. P. 47.4.





[2]See McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim.
App.), cert. denied, 522 U.S. 844 (1997).





[3]See Rojas v. State, 986 S.W.2d 241, 246 (Tex. Crim. App. 1998).





[4]Tex. Penal
Code Ann. ' 6.04(a) (Vernon 2003); see also Thompson v. State, 93 S.W.3d 16, 20-21 (Tex. Crim.
App. 2001), cert. denied, 540 U.S. 899 (2003).





[5]Wright v. State, 388 S.W.2d 703, 706 (Tex. Crim.
App. 1965).





[6]See, e.g., id.; see
also Thompson, 93 S.W.3d at 20-21.





[7]Rojas, 986 S.W.2d at 246.





[8]See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.
Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim.
App. 2001); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999),
cert. denied, 529 U.S. 1131 (2000).





[9]See Tex.
Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2005) (providing that the
trial court shall charge the jury on Athe law applicable to the case@).





[10]See Morin v. State, 682 S.W.2d 265, 268-69 (Tex.
Crim. App. 1983); see also Otto v. State, 173 S.W.3d 70, 71 (Tex. Crim.
App. 2005) (Cochran, J., concurring) (calling identical instruction Aa plain‑vanilla statutory instruction on concurrent
causation@).





[11]See Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim.
App. 2005).





[12]See Stuart v. State, 561 S.W.2d 181, 182 (Tex. Crim.
App. 1978) (holding that admission of evidence that defendant had been
acquitted previously of rape of a different complainant when he raised defense
of consent was reversible error in new case charging aggravated rape in which
defendant also raised defense of consent).





[13]See Tex.
R. App. P. 33.1(a); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App.
1998) (op. on reh=g), cert. denied, 526 U.S.
1070 (1999).





[14]See Templin v. State, 711 S.W.2d 30, 33 (Tex. Crim.
App. 1986).





[15]Curtis v. State, 89 S.W.3d 163, 173-74 (Tex. App.CFort Worth 2002, 
pet. ref=d).





[16]See Lang, 698 S.W.2d at 737.





[17]See Tex.
Penal Code Ann. ' 9.32(a)(2) (Vernon 2003).





[18]See Tex. R.
App. P. 44.2(b);
King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos
v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).